THOMAS MORACA, PLAINTIFF-RESPONDENT, AND EVELYN MORACA, PLAINTIFF, v. FORD MOTOR COMPANY, A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT-APPELLANT, AND MERLIN MOTOR COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Argued November 4, 1974—Decided February 6, 1975.

*Mr. Arthur Montano* argued the cause for appellant (*Messrs. Kisselman, Deighan, Montano & Summers,* attorneys).

*Mr. William J. Cook* argued the cause for respondent (*Mr. Warren W. Faulk,* on the brief; *Messrs. Brown, Connery, Kulp, Wille, Purnell & Greene,* attorneys).

The opinion of the Court was delivered by

SULLIVAN, J. In this products liability case involving a Lincoln Continental which was six months old at the time of the one car accident, a judgment in favor of defendants based upon a jury verdict of no cause was reversed by the Appellate Division, one judge dissenting, on the ground that the trial court's charge to the jury was erroneous. A new trial on liability was ordered. See *Moraca v. Ford Motor Co.,* 132 *N. J. Super.* 117 (1974). Because of the dissent, defendants appeal as of right. *R.* 2:2–1(a)(2). We affirm substantially for the reasons expressed in the majority opinion of the Appellate Division.

Plaintiff Thomas Moraca sustained serious injuries while driving his Lincoln Continental when it skidded off the road and ran into a tree. Plaintiff sued the Ford Motor Company and the Ford dealer from whom he had purchased the car claiming a manufacturer's defect in the car's steering system.[1]

At trial plaintiff not only attempted to show a specific defect in the steering mechanism of the vehicle, but also requested the trial court to charge the jury that plaintiff

---

[1]Plaintiff's wife Evelyn Moraca also joined in the suit on a *per quod* basis. Her claim was dismissed during trial and is not the subject of this appeal.

was entitled to a verdict if he produced evidence from which a jury might reasonably infer that the accident was caused by some defect in the car, whether identifiable or not, which existed prior to sale. In the same vein, plaintiff requested the further charge that liability may be established where the total effect of the circumstances shown from purchase to accident is adequate to raise an inference that the product was defective and that such condition was causally related to the mishap that occurred. The trial court denied both requests on the ground that they were included in the charge as given.

The matter was submitted to the jury on special interrogatories, the first of which asked whether the jury found "any defect" in the automobile operated by plaintiff Thomas Moraca making it unfit for its intended use which was a proximate cause of the accident. Question three asked whether the jury found that plaintiff Thomas Moraca was contributorily negligent.

After deliberating about two hours the jury returned with the following inquiry:

If the first question is answered "no" but we also answer question number 3 "no," can Ford circumstantially be held responsible and Mr. Moraca awarded damages?

Plaintiff's counsel immediately renewed his request that the jury be told that a manufacturer's defect can be established by circumstantial evidence and that no specific defect need be identified. The court again denied the requested charge and instead told the jury:

Now, if your answer to that [the first] question is "no" then Ford is not responsible for the accident and there can be no award against Ford; so if you have a situation where you answer question 1 that it is "no," that is, that there was no defect in the automobile, and your asnwer is also "no" to question number 3, that the plaintiff Mr. Moraca was not guilty of negligence * * *, you still would have no responsibility or no fault on the part of Ford and they cannot be held responsible.

Following further deliberation the jury returned a verdict of no cause for action in favor of both defendants by answering "no" to special interrogatories numbered one and three.

The majority opinion of the Appellate Division held that the evidence in the case warranted a charge that circumstantial proof of a defect is sufficient to support a verdict in favor of plaintiff and that the charge as given had not included this concept. We agree.

It is settled in this State that in a products liability case the injured plaintiff is not required to prove a specific manufacturer's defect. If the proofs permit an inference that the accident was caused by some defect, whether identifiable or not, a jury issue as to liability is presented. *Sabloff v. Yamaha Motor Co., Ltd.,* 59 *N. J.* 365 (1971). In *Scanlon v. General Motors Corp.,* 65 *N. J.* 582 (1974), we recently restated the products liability rule as applied to a motor vehicle and said the following about circumstantial proof of a defect, at pp. 592–593:

In addition to the direct evidence device a plaintiff may establish the manufacturer's responsibility for a defect by means of "other evidence which would permit an inference that a dangerous condition existed prior to sale," *Jakubowski v. Minnesota Mining & Manufacturing, supra,* 42 *N. J.* [177] at 184. Basically, the age and prior usage of the product in relation to its expected life span, durability and effective operability without maintenance are the most important considerations in determining whether an inference is permissible that the defective condition existed prior to sale.

The real question in this case is whether plaintiff's proofs are sufficient to invoke application of the circumstantial evidence rule. This is essentially a factual determination. Plaintiff Thomas Moraca had purchased the automobile, a 1968 model, new, on November 27, 1967. In February 1968 the car was returned to the dealer for a 6,000 mile checkup. The accident happened on May 28, 1968, at which time the car had been driven about 11,000 miles. Moraca had to take a business trip to Ocean City, Maryland, and decided to drive. Prior to starting out on the trip he stopped at his neighbor-

hood service station for gasoline and a checkup of the front end of his car. The attendant told him his power steering fluid was low and added fluid to the reservoir.

Plaintiff testified that his trip was uneventful until he crossed the Memorial Bridge and headed south on Route 13 in Delaware, a dual highway with two lanes in each direction separated by a 47-foot grass meridian. At the scene of the accident the roadway curved to the right gradually. It had started to rain. While driving in the right hand lane at a speed of about 45–50 miles an hour, plaintiff heard a "gink" in the front of his car and the steering mechanism suddenly locked and would not respond to plaintiff's efforts to steer the vehicle which skidded to the right, off the road, across the right shoulder and into a field where it struck a tree.

There was nothing to indicate that the manner of plaintiff's operation of the vehicle, or the condition of the roadway was a factor in the happening of the accident. Indeed the jury found that the accident was not caused by any negligence on the part of plaintiff. The physical evidence of the accident testified to by the state police officer was that the vehicle left the roadway in a side skid and travelled in a straight line without any turning whatsoever until it struck the tree.

The totality of the evidence and circumstances, if plaintiff's proofs are credited, tend to negate other possible causes of the accident and indicate that more likely than not a critical malfunction in the steering system occurred.

In *Scanlon* we cautioned that the older a product is the more difficult it is to prove that a defect existed while in the control of the manufacturer and that the product must be of a type such that a jury, after weighing all of the evidence, would be permitted to infer that, in normal experience, a malfunction would not have occurred at the particular point in the product's life span had there not been a defect attributable to the manufacturer.

■ We conclude that plaintiff's situation falls within the *Scanlon* circumstantial evidence criteria. A new Lincoln Continental properly operated and maintained should not in normal experience develop a critical malfunction in the steering mechanism in six months and after being driven about 11,000 miles. When this happens a jury could reasonably infer that the malfunction was due to some manufacturing defect.

■ We conclude also that plaintiff's proofs were sufficient to negate other likely causes of the steering malfunction thereby permitting the inference that it was the result of an unreasonably dangerous condition which existed at the time the vehicle left the manufacturer's hands. *Jakubowski v. Minnesota Mining & Manufacturing*, 42 *N. J.* 177, 186 (1964).

We recognize that in *Scanlon* we held that the plaintiff had failed as a matter of law to establish the essential ingredients of strict liability in a case where the station wagon involved in the one car accident was nine months old and had been driven about 4,000 miles. However, in that case the circumstances of the accident were at odds with plaintiff's claim of a jammed carburetor and indicated driver fault as the real cause. Indeed the plaintiff had told the investigating police officer that he simply had lost control of his car while attempting to pass a slow-moving vehicle. Nor did he make mention of anything being wrong with the station wagon when, some six months later, he visited the dealer who sold him the car.

In these circumstances we held that plaintiff's naked claim asserted at trial that the carburetor had jammed was insufficient to make out a circumstantial case of some unidentified manufacturer's defect. We held also that the proofs were insufficient to negate the other most likely possible causes of the malfunction. Our holding in the instant case is quite consistent with *Scanlon*.

Plaintiff asks this Court in affirming the Appellate Division ruling to limit the retrial to the issues of defendants' liability and damages. Specifically, plaintiff argues that

since the jury at the first trial found him not to be contributorily negligent, that finding should stand since the issues are separable and distinct.

We are satisfied that in the framework of this case the issues are not separable and that the full issue of liability, including contributory negligence, should be retried.

Affirmed.

PASHMAN, J. (concurring in result only). While I concur in the result reached by the majority in this products liability case, two points seem to me to require further comment.

First, in *Sabloff v. Yamaha Motors Co., Ltd.*, 59 *N. J.* 365, 366 (1971), we stated:

[W]henever the facts permit an inference that the harmful event ensued from some defect (whether identifiable or not) in the product, the issue of liability is for the jury, and the plaintiff is not necessarily confined to the explanation his expert may advance.

This rule is implicit in Justice Francis's opinion in *Henningsen v. Bloomfield Motors*, 32 *N. J.* 358, 409 (1960), and we have continued to adhere to it. *Scanlon v. General Motors Corp.*, 65 *N. J.* 582, 591 (1974); *Jakubowski v. Minnesota Mining & Manufacturing*, 42 *N. J.* 177, 183–184 (1964).

The dissenting judge below would limit the *Sabloff* rule to cases in which the allegedly defective product was "new" at the time of the mishap. To this position the majority below responded:

[W]e do not perceive the concept noticed in the dissent to be tenable. To the contrary, it is our opinion that prolonged uneventful use prior to the injurious occurrence does not legally bar the raising of an inference from the totality of the existing circumstances that the vehicle was defective and that such defect was casually related to the mishap, nor does it mandate that a plaintiff must identify a specific defect in order to establish a jury question of strict liability. Rather, we feel that the age of and the number of miles traversed by the vehicle are relevant factors to be considered by the jury, together with all other existing circumstances, in determining whether a manufacturer's defect existed and if it did, whether it was the proximate

cause of the vehicle's malfunction. See *Tucker v. Unit Crane & Shovel Corp.*, [256 Or. 318], 473 *P.* 2d 862 (Ore. Sup. Ct. 1970) ; *Hawkeye-Security Insurance Co. v. Ford Motor Co.*, 174 *N. W.* 2d 672, 679–681 (Iowa Sup. Ct. 1970).
[*Moraca v. Ford Motor Co.*, 132 *N. J. Super.* 117, (1974)].

It is common experience that manufacturing and design defects often do not reveal themselves immediatley to the purchaser of the product. A defect may lie, latent and hidden, for months or years until the right combination of circumstances causes it to manifest itself in product mal-function and mishap. To limit the *Sabloff* rule to products "new" at the time of the mishap would significantly cripple the policies which have motivated the development of the law of products liability in this State.

Age and prior usage of the product in relationship to its expected life span and durability are, of course, important considerations for the jury in its evaluation of the circum-stantial evidence presented by plaintiff. In practice, as age and prior usage of the product increase, it may become in-creasingly difficult for plaintiff to persuade the jury that the defect existed while the product was in the control of the manufacturer. They are, however, no more than facts to be considered by the jury; they are not grounds for depriving plaintiff of the opportunity to have the jury draw what in-ferences it can from all circumstantial evidence.

On a proper motion for judgment, *R.* 4:40–1, the trial judge must determine whether the existence of a defect while the product was under the control of the manufacturer and whether the existence of a causal relationship between the defect and the mishap are something more than mere "guess or speculation." *Henningsen v. Bloomfield Motors, supra* at 411; *Jakubowski v. Minnesota Mining & Manu-facturing, supra* at 182. That is the full extent of his role in such cases. Having made that threshold determination, he has no discretion as to whether or not to charge the jury that it may infer all the elements of plaintiff's case from circumstantial proofs. Further evaluation of plaintiff's case is exclusively within the realm of the jury.

Second, the majority recognizes that its decision in the present matter would, on its face, appear to be inconsistent with its decision in the recent case of *Scanlon v. General Motors Corp.*, 65 *N. J.* 582 (1974). It attempts, somewhat lamely, to distinguish the cases.

Undoubtedly Moraca has presented a more thorough and carefully prepared affirmative case than did his counterpart in *Scanlon*. Nevertheless, like my dissenting Brother Clifford, I find the cases indistinguishable in principle. In each case, the mishap occurred suddenly, under good driving conditions, and without any apparent negligence by the driver. In each case, plaintiff, while seeking to implicate a specific, identified defect, also sought to rely on the ability of the jury to apply its collective common sense and experience to all the circumstances surrounding the mishap, to determine whether some defect, perhaps some defect other than the one identified by plaintiff, existed while the product was in the control of the manufacturer and was the proximate cause of the mishap. In each case the trial judge intervened and, in effect, substituted his judgment for the judgment of the jury.

The majority now emphasizes as being of decisive importance the fact that the plaintiff in *Scanlon* initially characterized the mishap as "loss of control" rather than specifically attributing it to product defect. Review of the opinion of the Court in *Scanlon* does not reveal that the majority in that case placed any such importance on this rather innocuous fact.

I adhere to my dissent in *Scanlon*, 65 *N. J.* 582, 601–605:

It is the jury which passes on what "human experience tells us" as to why an accident such as this occurred, given whatever ambiguities and gaps exist in a plaintiff's case. That defendant's case is stronger or that plaintiff's case is inconclusive or, at best, weak, does not justify taking a case from the jury. [65 *N. J.* at 604].

Insofar as today's decision marks a retreat from the approval by this Court in *Scanlon* of intrusion by the trial

judge into the proper realm of the jury in products liability cases, I wholeheartedly join in it. But insofar as it reaffirms its approval of such intrusions, I am obliged to disagree.

CLIFFORD, J. (dissenting). With a nod in the direction of *Scanlon v. General Motors Corp.*, 65 *N. J.* 582 (1974), the majority generously appraises today's holding as "quite consistent" with that recent effort to restate our formulation of the strict liability in tort doctrine. While the implication is that *Scanlon* is alive and robust in the fourth month of its life, in reality that decision is left reeling from the wounds inflicted upon it by the Courts' opinion. I cannot reconcile the two cases.

Here, as there, plaintiff sought to prove a specific defect. Having failed in that effort, he now relies, as did plaintiff in *Scanlon,* on the alleged malfunction of his automobile in order to show a defect at the time of the accident. This leaves him with the burden of proving that the unidentified defective condition existed while the vehicle was in the control of the defendant. Here, as there, he introduced no direct evidence to that effect but seeks the benefit of the inference, arising from "other evidence" or from his negating of other causes of the accident, that a dangerous condition existed while the defendant had control of the product. See *Jakubowski v. Minnesota Mining & Manufacturing,* 42 *N. J.* 177 (1964).

In that regard the following from *Scanlon* is instructive:

A motor vehicle is not a simple uncomplicated instrumentality. Its parts require periodic maintenance, minor adjustments and occasional major repairs or replacements. A nine-month old station wagon with 4000 miles on it is not the kind of product as to which human experience tells us an accident such as the one in question does not generally occur in the absence of a defect existing in the hands of the manufacturer. Relating its expected life span, durability and effective operability without maintenance to the age and prior usage of the Scanlon vehicle, we hold as a matter of substantive law that in the circumstances of this case the "other evidence" offered does not justify the drawing of an inference that any defect existed in the hands of the manufacturer or retailer.

It is equally clear that plaintiff failed to prove the defendant's responsibility for the defect by the negation of the other most likely possible causes of the accident. He attempted to do so by means of the testimony of an expert who had not examined the product and who testified in response to a hypothetical question. Quite properly, that hypothetical question contained within it an asserted negation of several possible alternative causes of the accident which would be obvious to a layman, *i. e.*, the car was not properly maintained and operated. But assuredly other possible causes existed, and given the complex nature of the product, plaintiff should have been required further to outline and discount the most likely of these in focusing upon the specific defect which he embraced. [65 *N. J.* at 599–600].

The vehicle in question here was six months old with 11,000 miles of wear. If, as a matter of law, the critical inference cannot be drawn when the automobile is nine months old with 4,000 miles on it (the distance travelled is clearly more significant than a vehicle's age), *a fortiori* it cannot arise as to plaintiff's 11,000-mile Lincoln.

And if plaintiff's effort in *Scanlon* to negate other causes of the alleged defect fell short of what is required for the reason, among others, that his expert failed to "outline and discount the most likely of these [other causes] in focusing upon the specific defect which he embraced," then *a fortiori* where, as here, the experts did not even refer to any other possible causes, much less undertake to discount them, there is nothing for the jury to consider. This car had travelled 5,000 miles since its last dealer checkup. Whatever support the need to add power steering fluid may lend to the plaintiff's theory of a specific defect in the power steering mechanism, it hardly suffices, either alone or taken with all the other circumstances, to take this case to the jury on the basis of plaintiff's having negated "other causes of the failure of the product for which the defendant would not be responsible * * *." *Jakubowski, supra,* 42 *N. J.* at 184. *Scanlon* clearly implies a requirement of expert testimony for successful presentation of this theory in the case of a complex instrumentality such as a motor vehicle. 65 *N. J.* at 593–594. There was none on this issue in the case *sub judice*.

It is not inflexible devotion to precedent nor sterile application thereof which dictates my view of this case. I recognize that reappraisal and modification of established doctrine is required to the end that healthy development of our law may reflect a response to society's ever-changing needs. Were there a persuasive reason to abandon our so recently reaffirmed principles in this area of the law, I would not hesitate to join in that venture — nor to rely, if necessary, on that old chestnut, "[t]he matter does not appear to me .now as it appears to have appeared to me then." Bramwell, B., in *Andrews v. Styrap,* 26 *L. T. R.* (n. s.) 704, 706 (Ex. 1872). But the principles of *Scanlon* do appear to me now to be as valid as they were four months ago. Applying them here would lead me to reverse the Appellate Division and reinstate the judgment in favor of defendant-appellant.

MOUNTAIN, J., joins in this dissenting opinion.

PASHMAN, J., concurring in the result.

*For affirmance*—Chief Justice HUGHES, Justices JACOBS, SULLIVAN, PASHMAN and Judge CONFORD—5.

*For reversal*—Justices MOUNTAIN and CLIFFORD—2.