796 P.2d 101

Paul J. MURRAY and Linda Murray, husband and wife, Plaintiffs–Appellants,

v.

FARMERS INSURANCE COMPANY, a foreign corporation, Defendant,

and

Thomas M. Vasseur and Jane Doe Vasseur, husband and wife, Defendants–Respondents.

No. 17570.

Supreme Court of Idaho.

June 28, 1990.

Thomas A. Mitchell, Coeur d'Alene, for plaintiffs-appellants.

Quane, Smith, Howard & Hull, Boise, for defendants-respondents.

Michael E. Ramsden, argued.

McDEVITT, Justice.

Paul Murray was seriously injured in a single car accident when he failed to negotiate a curve in a new Chrysler automobile. Paul and Linda Murray investigated the possibility of bringing an action against Chrysler Motors, alleging the existence of a defect in the automobile leading to the accident. They retained Thomas Vasseur to represent them in that action.

Following the accident, the insurance carrier on the vehicle, Farmers Insurance Company, had the car towed to a salvage yard. Vasseur requested that the car be preserved until it could be examined by an expert pursuant to the investigation of the product liability action, and Farmers agreed to delay salvaging the vehicle. One investigator, Mel Stewart, was retained by Vasseur to survey the general type of damage done to the vehicle, but no design defect or accident reconstruction expert ever viewed the wreckage. Finally, after a year's delay, Vasseur was notified that the car would be salvaged unless he indicated that he wanted the vehicle preserved for an additional period of time. No such notice was forthcoming, and the car was destroyed.

The Murrays retained other counsel and brought this action against Thomas Vasseur and Farmers Insurance Company. The Complaint alleged that Farmers had a duty not to allow the car to be salvaged before it could be examined by an expert. The theories of liability relied upon were 1) the tort of spoliation of evidence; 2) negligence; 3) intentional interference with a tort recovery; and 4) breach of contract. Vasseur was charged with negligence in handling the product liability action, including the breach of the duty to preserve evidence vital to the case by allowing Farmers to destroy the vehicle, and the failure to retain an expert to examine the car for a defect.

The district court granted summary judgment to Farmers, noting that although it may have assumed a duty to preserve evidence by its gratuitous agreement to keep the vehicle intact, that duty had been fulfilled by the yearlong delay of the salvage operation. The court found that as a matter of law this time period was sufficient to allow the Murrays to obtain an expert opinion on the condition of the vehicle. The court further held that even if the duty was not extinguished by the passage of a reasonable period of time for examination of the vehicle, the duty was surely terminated when Farmers notified Vasseur that the vehicle would be salvaged unless he requested a further extension of time, to which he did not respond. The theories based on intentional torts were summarily dismissed, as there was no evidence that the action was done with malice toward the plaintiff or with any intent to interfere with the potential litigation. The contract claim was also dismissed, as the agreement to preserve the vehicle was unsupported by consideration.

■ The grant of summary judgment in favor of Farmers has been appealed, but there has been no argument presented to us on this point. Issues on appeal which are completely unsupported by argument or authority will not be considered by this Court. *In re Estate of Freeburn*, 101 Idaho 739, 620 P.2d 773 (1980).

The trial against Vasseur resulted in a special jury verdict finding that although Vasseur had been negligent in handling the product liability claim, it was more probable than not that the Murrays would not have won a settlement or verdict in their favor in the product liability action.

There are three main issues on appeal. First, appellants argue that the trial court should have instructed the jury on the tort of "spoliation of evidence" in relation to the conduct of Vasseur. Second, the appellants apparently argue that this Court should overturn the jury's finding that Vasseur's negligence did not cause appellants to lose the opportunity for a favorable settlement or verdict in the product liability claim against Chrysler. Third, appellants challenge the trial court's failure to grant a motion for a new trial based on "false statements" by one of the jurors during *voir dire*.

## I.

### BURDEN OF PROOF

In a malpractice action, the plaintiff has the burden of proving not only the negligence of the attorney, but also that the negligence was the proximate cause of the loss of a right to recover in the underlying case. *Johnson v. Jones,* 103 Idaho 702, 652 P.2d 650 (1982).

In this case, the Murrays had the burden of proving that they had some chance of success in the product liability action against Chrysler before they would be entitled to recover damages from Vasseur. The trial court instructed the jury extensively on the applicable law of strict product liability under § 402A of the Restatement of Torts, as well as under express and implied warranty theories. Following its presentation of each individual theory which might have been asserted against Chrysler, the trial court instructed the jury that under any theory of product liability asserted, the plaintiff would have to prove that the injury was the result of a defective condition which existed at the time the product left control of the manufacturer.

At issue in this case is the quantum of proof necessary to prove a defective condition. Appellants argue that they have met their burden on this element. Although it is difficult to discern precisely the basis for this argument, it appears to be premised either upon the theory that they are entitled to a presumption of the existence of a defect based on the circumstantial evidence consisting of the fact of the accident, or that Vasseur's negligence in allowing the vehicle to be salvaged serves to shift the burden of proof to the defense to prove that there was no defect. We hold that appellants failed to meet the burden of proving the existence of a defect in the vehicle.

### A. Circumstantial Evidence.

Appellants cite a long line of authority relating to the means of proving a defect in a product liability case. It is undisputable that the cases do not require a plaintiff to prove the existence of a specific defect. Instead, the product liability plaintiff may rely upon circumstantial evidence, including "proof of the malfunction of a part for which the manufacturer alone could be responsible, ... or the elimination of other likely causes by satisfactory evidence." W. Prosser, *Law of Torts* 673–74 (4th ed. 1971). In other words, if the plaintiff cannot prove that a specific defect caused the accident, it will suffice if it can be shown that the product malfunctioned, and that there are no other reasonably likely causes of the malfunction. This showing leads to the inference that some defect caused the malfunction, and satisfies the plaintiff's burden of proof.

Thus, in *Cornell Drilling Co. v. Ford Motor Co.,* 241 Pa.Super. 129, 359 A.2d 822 (1976), the court held there was sufficient evidence of a defect to survive a defense summary judgment motion where a brand new Ford truck, parked with the ignition off and unattended, burst into flames without any apparent external cause.

In *MacDougall v. Ford Motor Co.,* 214 Pa.Super. 384, 257 A.2d 676 (1969), the denial of a motion for judgment notwithstanding the verdict was upheld where an expert could not unequivocally relate any of three specific defects found to the cause of the accident, but the court held that the plaintiff's testimony that she could not control the steering of her one month old car "establishes a mechanical malfunction in the absence of abnormal use." *Id.,* 257 A.2d at 680.

In *Moraca v. Ford Motor Co.,* 66 N.J. 454, 332 A.2d 599 (1975), the case was remanded for a new trial because the trial court had erroneously refused to instruct the jury that circumstantial proof would suffice to prove a defect. In that case there was nothing in the record to bring into question the plaintiff's operation of the vehicle or the condition of the road as factors in the accident. The court held that "[t]he totality of the evidence and circumstances ... tend[s] to negate other possible causes of the accident and indicate that more likely than not a critical malfunction in the steering system occurred." *Id.,* 332 A.2d at 601. The court distinguished a

prior case which held that "the plaintiff's naked claim asserted at trial that the carburetor had jammed was insufficient to make out a circumstantial case of some unidentified manufacturer's defect. We also held that the proofs were insufficient to negate the other most likely possible causes of the malfunction." *Id.* 332 A.2d at 602.

*Stewart v. Budget Rent–A–Car Corp.*, 52 Hawaii 71, 470 P.2d 240 (1970), held that testimony by the operator of the automobile is one means of proving the existence of a defect where expert testimony is not available. The court noted that where experts could not conclusively pinpoint the cause of the accident or where parts were no longer available, the fact of the accident and probabilities are all that remain. "At this point the plaintiff can attempt to negate the user as the cause and further negate other causes not attributable to the defendant." *Id.*, 470 P.2d at 244.

The court in *Stewart v. Ford Motor Co.*, 553 F.2d 130 (D.C.Cir.1977), offered the following summary of the case law on this point:

> In holding that the existence of a defect may be proved by circumstantial evidence, ... courts in other jurisdictions have indicated that the burden remains on the plaintiff to present evidence on two closely related points. First, plaintiff must present evidence which would tend to negate causes for an accident other than a defect in the product. Second, plaintiff must present proof which would suggest that whatever defect might have existed was one introduced into the product by the defendant.
>
> The quantum of proof that must be adduced to meet these two specific requirements is not great.... [I]n the automobile accident case which was the subject of *Bollmeier v. Ford Motor Co.* [130 Ill.App.2d 844, 265 N.E.2d 212 (1970)], the plaintiff testified only that he had had nothing to drink and that his speed was not excessive at the time of the accident.
>
> \*   \*   \*   \*   \*   \*

> In identifying the causes plaintiff must negate, courts have usually required proof rebutting only the most obvious causes (such as drinking or excessive speed in automobile accident cases....)

*Id.*, 553 F.2d at 137–38 (footnotes and citations omitted).

Finally, in a case from our own jurisdiction, *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1976), this Court held that:

> A prima facie case may be proved by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant.
>
> \*   \*   \*   \*   \*   \*

> Testimony of the user or operator of the product as to the circumstances of the event is sufficient to establish malfunction.
>
> Related to proof of malfunction is proof that the event in question is not caused by any abnormal use to which the product had been put by user or operator since such proof circumstantially and inferentially indicates that the malfunction of the product is due to the defect alone. Additionally related is evidence which tends to eliminate reasonable secondary causes.... However, it is also clear that the plaintiff will not carry his burden of proof by merely proving the fact of the accident.

*Id.*, 97 Idaho at 747–49, 553 P.2d at 1311–13 (citations omitted).

These cases are all cited by appellants for the proposition that circumstantial evidence is sufficient to prove the existence of a defect. This rule was adequately reflected in the instructions provided to the jury. Appellants claim that the rule of these cases leads to the conclusion that sufficient evidence was produced in this case to meet the burden of proof on this issue.

■ These cases certainly establish that proof of a malfunction may circumstantially prove the existence of a defect, and that a malfunction may be established based on

the testimony of the user alone, without the benefit of expert testimony. However, these cases also hold that an integral part of the proof involves negating other reasonable causes of the accident.

■ In the present case, Paul Murray's testimony concerning the circumstances of the accident and other evidence is not sufficient to negate other possible causes of the accident. There are two facts in the record which would tend to establish a defect. First, the fact that the car was new, with less than 8000 miles on the odometer at the time of the accident. The second is the statement by an investigator retained by Vasseur, Mel Stewart. Stewart, who was not an accident reconstruction or mechanical expert, was retained to survey the type of damage sustained by the vehicle. In the course of a short description of the external damage, Stewart noted that the front wheels were at an odd angle, "indicating the possibility of a broken tie rod."

On the other hand, there is ample evidence in the record which would support the inference that the accident was not due to a defect in the automobile. The accident occurred late at night on the downgrade of a winding, unlit road. Further, Murray testified that he had consumed one or two beers prior to the accident. The police report stated that Murray had said he was unfamiliar with the front wheel drive of the car, which was primarily used by his wife. Murray told the investigating officer, as reflected in the police report, that he felt a loss of traction, as compared to his testimony on the record that he lost control of the steering. The police report listed "driver action" as a contributing circumstance to the accident. Murray's own testimony shows that he believed that he had hit ice.

These circumstances more than adequately distinguish the present case from those cited by appellant, and lead us to conclude that appellants have not met the burden of proving the existence of a defect in the automobile.

## II.

### SPOLIATION OF EVIDENCE.

■ Appellants urge that this Court should require the district court to instruct on the tort of "spoliation of evidence," a recent innovation in tort law which has been adopted in California and Alaska. *Smith v. Superior*, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984); *Hazen v. Anchorage*, 718 P.2d 456 (Alaska 1986). These first cases contemplated the tort of intentional spoliation of evidence, and the concept was expanded in another case to include the negligent spoliation of evidence. *Velasco v. Commercial Bldg. Maintenance Co.*, 169 Cal.App.3d 874, 215 Cal.Rptr. 504 (1985).

One of appellant's requested instructions provided:

> You are instructed that if an individual or other legal entity negligently allows or intentionally causes property to be destroyed when it is or should be reasonably foreseeable that the retention of such property is necessary for another individual to prevail in a lawsuit, then the person or legal entity which allows or causes the destruction of the property shall be liable to the person who has need of the property for all damages sustained by that individual.

There is no indication in the record that an intentional wrong was committed by Vasseur in his failure to preserve the Murray's car for the purpose of an expert examination. Therefore, our only concern is whether the district court committed reversible error in failing to instruct the jury on the theory of "negligent spoliation of evidence." We hold that the district court's refusal to so instruct the jury was not in error.

The cases cited by appellant which directly or indirectly support the imposition of liability for negligent spoliation of evidence concern themselves with whether a duty was owed to the plaintiff. *Velasco v. Commercial Building Maintenance* held that no duty was owed by a janitorial service to the plaintiff, where a janitor had disposed of an unmarked bag of bottle shards that had been left on an attorney's desk. The bag contained evidence in a prospective lawsuit, and the plaintiff claimed that the

janitor had negligently deprived him of the ability to recover in that action. In holding that no duty was established in that case, the court based its reasoning on several factors enunciated in a case involving negligent interference with prospective economic advantage, *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979). The *J'Aire* Court specifically stated that those factors were relevant to proof of the existence of a duty.

Assuming *arguendo* that the tort of negligent spoliation of evidence is part of the law of Idaho, the holdings of those cases would not end our inquiry. In any negligence action, the plaintiff has the burden of proving not only a duty, but also a breach of that duty, and that the breach was the proximate cause of the plaintiff's damage. *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980). The jury in this case was instructed on the theory of common law negligence as the basis for malpractice liability.

It is evident that a duty existed in this case by virtue of the attorney-client relationship. A breach of duty was established by the jury's conclusion that Vasseur had been negligent in the handling of the product liability action, and the record supports this finding. The jury also found that the Murrays would probably not have achieved a favorable outcome in their case against Chrysler Motors. This finding amounts to the jury's conclusion that Vasseur's conduct did not proximately cause damages.

This fundamental framework of negligence liability is universal, no matter what title is attached to the particular negligent act. Negligence by any other name still requires proximate cause. The jury concluded that the causation element of common law negligence was absent from this case. Therefore, whether the tort was negligent spoliation of evidence, negligent interference with a prospective economic advantage, or just the unglamorous variety of common law negligence, a crucial element was found lacking by the jury. No talismanic transformation of the title of the tort can alter that finding.

For this reason we conclude that the trial court did not err in refusing to instruct the jury on the tort of spoliation of evidence.

## III.

## FALSE STATEMENT BY JUROR DURING VOIR DIRE.

■ Appellants challenge the district court's denial of a motion for a new trial, which was premised on the contention that a false statement by a juror during the jury selection process deprived appellants of a fair trial.

Potential jurors initially filled out a "Jury Qualification Questionnaire," which inquired, among other things, whether "you or any member of your immediate family ever suffered serious bodily injury?" Juror Greene responded in the negative. It was later established, however, that Greene's step-son had been killed in a car accident involving a drunk driver. She later stated by affidavit that she has "strong and negative feelings" about drunk drivers. Appellants argue that her "false answer" in the questionnaire led them to neglect that line of inquiry during *voir dire*.

Jurors were chosen by a "struck jury" system, whereby appellant's counsel first asked several questions of the panel as a whole, then questions were asked of each juror individually. Once inquiry of each juror was complete, that juror was passed for cause, and counsel proceeded to question the next juror. Counsel questioned juror Greene, seated as juror number two, and passed her for cause without questioning her feelings about drunk drivers. Counsel first inquired about prejudice toward drunk drivers while questioning juror number three. Counsel then addressed the same question to the entire panel, asking whether, based on the fact that Murray had one or two beers prior to the accident, anyone would feel prejudice against the plaintiffs. Two jurors responded affirmatively, including juror Greene. Counsel requested permission to go back to question Greene, but the trial judge would not per-

mit it, as counsel had already passed Greene for cause.

Appellants cite myriad cases to support their argument that a false statement by a juror during *voir dire* amounts to an automatic entitlement to a new trial. There is no Idaho case law directly on point. We have examined, however, a number of cases from other jurisdictions on this issue. Especially numerous were the cases from the state of Missouri, where overeager jurors seem to constitute a regional affliction.

Most cases of false statements made by jurors during the jury selection process involve statements or omissions that are intentionally misleading. Where the reason offered by the juror for the misstatement or omission unduly strains the imagination of the trial judge, the court may find that the concealment was intentional. For example, in *Sadlon v. Richardson*, 382 S.W.2d 9 (Mo.App.1964), the court was unpersuaded by the juror's assertion that when questioned about prior personal injury claims during *voir dire*, he simultaneously did not recall his prior lawsuit, and did not think the question related to his prior claim. "Bias and prejudice may be inferred from intentional concealment of such information." *Snavely v. Kansas C.T.R. Co.*, 461 S.W.2d 1, 4 (Mo.1970). Thus, an intentionally misleading answer or omission by a juror is generally held to be sufficient basis for a grant of a new trial to the complaining party. *Anderson v. Burlington N.R. Co.*, 651 S.W.2d 176 (Mo.App.1983), *cert. denied*, 476 U.S. 1116, 106 S.Ct. 1974, 90 L.Ed.2d 657 (1986).

Other cases involve misstatements by jurors where the falsity results from a misunderstanding by the juror. In such circumstances, the cases generally require the complaining party to show some prejudice before becoming entitled to a new trial. *Isaacson v. Husson College*, 332 A.2d 757 (Me.1975); *Johnson v. Kansas City Public Service Co.*, 265 S.W.2d 417 (Mo.1954); *Blond v. Overesch*, 527 S.W.2d 663 (Mo. App.1975). Similarly, where the question is not specific enough to require disclosure, courts have required parties to prove prejudice before a motion for a new trial will be granted. *Kroger Grocery & Baking Co. v. Golder*, 312 Ky. 231, 226 S.W.2d 957 (1950); *McCarthy Oil & Gas Corp. v. Cunningham*, 255 S.W.2d 368 (Tex.Civ.App.1953); *Vivion v. Brittain*, 510 P.2d 21 (Wyo.1973).

In the present case, the Jury Qualification Questionnaire asked whether the juror or any member of her immediate family had ever sustained serious bodily injury. Greene's explanation for her failure to mention her stepson's death was that she did not relate the question to the incident. She did not say why she failed to make the connection, but it is within the realm of possibility that she either did not equate "serious bodily injury" with death, or that she did not consider her stepson to be a member of her "immediate family." The trial court recognized that the question was vague enough so that it cannot be said that her answer was a "false statement." We agree.

## IV.

### ATTORNEY FEES ON APPEAL.

Respondents have requested attorney fees on appeal, pursuant to Idaho Appellate Rule 41. Attorney fees may be awarded where the appellate court "is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably, or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). The test is not met in this case. Therefore, we feel that an award to respondent Vasseur of attorney fees on appeal is not justified.

Costs to respondent Vasseur.

BAKES, C.J., and BISTLINE and BOYLE, JJ., concur.

JOHNSON, Justice, concurring and specially concurring.

I concur with part I (Burden of Proof), part III (False Statement by Juror) and part IV (Attorney's Fees on Appeal) of the Court's opinion. I specially concur with part II (Spoilation of Evidence).

In part II the Court assumes *"arguendo* that the tort of negligent spoliation of evidence is part of the law of Idaho." I am not prepared to make this assumption, even for the sake of argument. I would hold that the trial court's rejection of the instruction on spoliation of evidence requested by the Murrays should be affirmed, because the instruction did not correctly state the law of Idaho.