258 N.J. Super. 60 (1992)
609 A.2d 75
ALICE CONSALO AND ANTHONY CONSALO, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
GENERAL MOTORS CORPORATION-CADILLAC DIVISION, DEFENDANT-RESPONDENT, AND FISHER-ELKINS BUICK, OLDSMOBILE AND CADILLAC, INC., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1992.
Decided July 7, 1992.
*61 Before Judges STERN and KEEFE.
*62 William M. Gilson argued the cause for appellants (Lipman, Antonelli, Batt & Dunlap, attorneys; Robert F. Dunlap, on the brief).
Frederick W. Rom argued the cause for respondent (Lavin, Coleman, Finarelli & Gray, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
In this product liability case, plaintiff Alice Consalo contended that an unspecified manufacturing defect caused an unintended, sudden and uncontrollable acceleration of her 1986 Cadillac Sedan Deville resulting in an accident from which she sustained personal injuries. Her husband, Anthony Consalo, sued per quod. At the end of the plaintiffs' case, Judge Steven Z. Kleiner granted defendant General Motors Corporation's motion for involuntary dismissal. Plaintiffs appeal from that judgment contending that the judge applied incorrect principles of law to the facts of the case. We affirm substantially for the reasons set forth by Judge Kleiner.
The facts taken in a light most favorable to plaintiffs are as follows. The 1986 Cadillac Sedan Deville was purchased in January 1986. Plaintiff Alice Consalo was the principal operator of the vehicle. She testified that she drove the car 90% of the time. There were 13,264 miles on the vehicle when the accident occurred on October 3, 1986.
Apparently routine service was performed on the vehicle from the date of purchase until the time of accident. However, plaintiffs experienced no difficulty with the accelerator, the brakes or the electrical system of the vehicle before the date of the accident. On the date of the accident, Alice Consalo drove the vehicle, without incident, from her home in Vineland to her husband's place of business located ten to fifteen minutes from her home. Her husband drove the vehicle from that point to a place where they had lunch a short distance away. After lunch Anthony Consalo drove the vehicle back to his place of business *63 also without incident. He parked the vehicle facing the office building where he worked. When he alighted from the vehicle, Alice moved across the front seat behind the wheel.
In order to exit the premises, Alice intended to back up and make a 180 degree turn in order to enter Main Street. She recalled putting the vehicle in reverse, backing up and bringing the vehicle to a stop without experiencing any problem. When she shifted the vehicle into drive she was unsure whether she touched the accelerator but recollected that the vehicle lunged ahead "like a jet." Although she was not certain where her right foot was at that moment in time, she testified that her left foot was definitely on the floor of the vehicle "as it usually is when I drive." As the vehicle lunged forward she "slammed on [the] brakes, [the] service brakes." Despite the fact that she kept her foot "slammed on the brake, the service brake, the brake I always use" she was unable to stop the vehicle. Instead of slowing the vehicle, she testified that the vehicle actually accelerated progressively as if she had been applying the accelerator rather than the service brake. Plaintiff was able to control the vehicle sufficiently in order to avoid striking a house that was on the premises but ultimately struck the corner of a loading dock some distance away. Although she admitted that she thought about applying the emergency brake a few seconds before the impact, the emergency brake was never applied.
The accident was witnessed by her husband and two of his employees. All of the witnesses agreed that their attention was called to the vehicle by the sound of the engine, and all agreed that they saw one or both rear wheels of the vehicle "lock up" at a point some distance after their attention was called to the racing engine. Mr. Lane, one of the witnesses, testified that the vehicle travelled approximately 200 feet from the building where Mr. Consalo left the vehicle to the point of impact and he saw the driver's side rear tire lock-up approximately 100 feet from the point of impact.
*64 The vehicle was examined by an expert engaged by plaintiffs. In plaintiffs' opening statement to the jury, it was stipulated that the expert was unable to offer any opinion concerning a specific defect in the vehicle.[1] In response to General Motors' requests for admissions, plaintiffs admitted they were unaware of any evidence to prove a defect in the idle speed control motor, the cruise control system, the braking system or the acceleration system. Finally, plaintiffs admitted they did not "know or contend to know what caused the occurrence of the alleged unwanted acceleration of the subject vehicle at the time of the occurrence of the subject accident."
Stated succinctly, General Motors' motion for involuntary dismissal was based upon Scanlon v. General Motors Corp., 65 N.J. 582, 326 A.2d 673 (1974). In opposition to the motion, plaintiffs relied upon Moraca v. Ford Motor Co., 66 N.J. 454, 332 A.2d 599 (1975). In Scanlon, plaintiff contended that there was a defect in the acceleration system which caused an unintended sudden acceleration of the vehicle. In Moraca, plaintiff contended that the accident was caused by a defect in the steering mechanism. Neither plaintiff was able to prove the specific defect which caused the accident to occur. Thus, in both cases, plaintiffs lacked direct evidence that the product was defective.
However, inability to prove a defect by direct evidence is not fatal to a plaintiff's case. Where such proof is unavailable, a plaintiff may prove a defect either by circumstantial evidence which would permit an inference that a dangerous and defective condition existed prior to sale, or by negating other causes in order to make it reasonable to infer that a dangerous condition existed while defendant had control of the product. See Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, *65 170, 406 A.2d 140 (1979); Jakubowski v. Minnesota Mining and Mfg., 42 N.J. 177, 184, 199 A.2d 826 (1964).
In Scanlon, plaintiff's vehicle was nine months old and had 4,000 miles on it at the time of the accident. Plaintiff's expert testified that the sudden acceleration could have been caused by a broken or jammed fast idle cam. However, that theory was conclusively discredited by proof that the cam was intact subsequent to the accident. The Court acknowledged that plaintiff was not limited to a specific theory of defect and that circumstantial evidence or evidence negating other causes could be utilized to prove a defect. However, the Court concluded from its review of the record that plaintiff had not established a prima facie case of defect while in defendant's control, identifying that element of proof as "the more difficult obstacle for plaintiff to overcome" in these type of cases. Scanlon, supra, 65 N.J. at 591, 326 A.2d 673.
In Moraca, plaintiff's vehicle was six months old and had been driven about 11,000 miles at the time of the accident. In Moraca, the Supreme Court held that plaintiff had offered sufficient circumstantial evidence and evidence negating other causes to permit a jury to infer there was a defect in the vehicle that existed while in the control of the manufacturer.
In the subject case, Judge Kleiner found the plaintiffs' proofs were more like those presented in Scanlon than in Moraca. We agree. The explanation of the differing outcomes in the Scanlon and Moraca cases is found not by the age of the vehicles, the amount of miles they had been driven, or the credibility of the plaintiffs but, rather, in the quality of the plaintiffs' proofs necessary to create the inference that a defect existed at the time it left the manufacturer's control. It is important to note that the Moraca decision did not reject the Scanlon analysis. Indeed, the Court found that its holding in Moraca was "quite consistent with Scanlon." Moraca, supra, 66 N.J. at 460, 332 A.2d 599.
*66 In Scanlon the Court observed that as the product becomes more complex, such as automobile, additional causes for the accident not readily apparent to laymen must be considered, thereby necessitating expert testimony which could chart and negate the most likely causes. Scanlon, supra, 65 N.J. at 593-94, 326 A.2d 673. In Scanlon, plaintiff's use of expert testimony was limited to an attempt to prove a specific defect in the idle cam. That effort failed leaving only plaintiff's "naked claim ... that the carburetor had jammed." Moraca, supra, 66 N.J. at 460, 332 A.2d 599.
However, in Moraca, plaintiff testified that prior to taking the trip during which the accident happened he stopped at his neighborhood service station for a check-up. The attendant told him his power steering was low and added fluid to the reservoir. Thereafter, just before the accident, plaintiff heard a "gink" in the front of his car and the steering mechanism suddenly locked up and would not respond to his efforts to steer. The skid marks in the roadway left by his vehicle showed that the vehicle entered into a "side skid and travelled in a straight line without any turning whatsoever until it struck the tree." Id. at 459, 332 A.2d 599. Plaintiff Moraca produced two experts at the time of trial. They offered testimony that the loss of power steering fluid would cause an instantaneous lock-up of the steering mechanism, and the loss of fluid could have been caused by either of two manufacturing defects. Moraca v. Ford Motor Co., 132 N.J. Super. 117, 121-22, 332 A.2d 607 (App.Div. 1974), aff'd, 66 N.J. 454, 332 A.2d 599 (1975). Thus, although plaintiffs' experts were unable to pinpoint the specific defect which caused the accident, there was sufficient circumstantial evidence from which a jury could conclude that a defect of some nature existed in the steering mechanism and because of the age of the vehicle an inference could be drawn that the defect existed at the time it left the manufacturer's control. Expert testimony was essential to establish plaintiffs' circumstantial case.
*67 In the subject case, while plaintiff contends that her foot was on the service brake at all times after the sudden acceleration, she admitted that the vehicle's progressive acceleration was as if she had depressed the accelerator to the floor rather than the brake. An automotive expert who examined the vehicle was, by plaintiffs' own stipulation, unable to express any plausible reason for the unintended acceleration. Thus, plaintiffs' proofs in this matter were more akin to the "naked claim" of defect asserted in the Scanlon case than the proofs offered in Moraca.
Affirmed.
NOTES
[1] General Motors' motion to bar plaintiffs' expert from testifying at trial was granted without opposition.