**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3624-23

BRIAN MOLEEN and
SHERI MOLEEN,

     Plaintiffs-Appellants,

v.

RICHARD MOLEEN and
LOUISVILLE LADDER, INC.,

     Defendants-Respondents.

_____

> Argued September 11, 2025 – Decided September 19, 2025
>
> Before Judges Mawla, Bishop-Thompson, and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1240-18.
>
> Jeremy L. Hylton argued the cause for appellants (Brach Eichler, LLC, attorneys; Edward P. Capozzi and Jeremy L. Hylton, on the brief).
>
> Robert C. Neff, Jr., argued the cause for respondent Richard Moleen (Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP, attorneys; Robert C. Neff, Jr., of counsel and on the brief).

Joseph DiRienzo argued the cause for respondent Louisville Ladder, Inc. (DiRienzo & DiRienzo, PA, attorneys; Joseph DiRienzo, on the brief).

PER CURIAM

Plaintiffs Brian and Sheri Moleen appeal from:  a June 5, 2020 order granting summary judgment to defendant Richard Moleen; and a June 14, 2024 order granting a no cause judgment in favor of defendant Louisville Ladder, Inc., pursuant to Rule 4:40-1.  We affirm.

Richard[1] is Brian's father and owns a beach home in Ocean County.  This matter stems from an incident that occurred when Brian was using a sixteen-foot aluminum ladder manufactured by Louisville to paint louvers at Richard's home.  Richard permitted Brian to stay at the home in exchange for helping with its maintenance.  As a result, Brian frequently stayed there with his family and moored and stored his fishing boat there year-round.

On the date of the incident, Richard asked Brian to paint two attic louvers.  Richard had the supplies needed for the job, including the ladder.  He did not instruct Brian on how to complete the job.  The ladder was stored in a garage,

---

[1]  Intending no disrespect, we refer to Richard and Brian by their first names because they share the same surname.

A-3624-23

which contained other products, including chemicals. The residence was near the ocean and exposed to saltwater.

After painting one louver, Brian attempted to create a sturdy, level surface for the ladder by placing plywood from Richard's garage in a flower bed to paint the other louver. He extended the ladder and climbed to its middle. After painting a third of the louver, he began to climb down the ladder, when he felt it shift and start to fall to the right. Brian pushed off the ladder and landed on the ground, suffering injuries. After the fall, he saw that the legs of the ladder were bent.

Plaintiffs sued defendants. They alleged negligence against Richard and product liability claims against Louisville, including design defect, manufacturing defect, and failure to warn. The court entered several discovery orders, including one to compel metallurgical testing of the ladder, and set a deadline for the exchange of expert liability reports.

Prior to the discovery end date and exchange of expert reports, Richard moved for summary judgment to dismiss the claims against him. The motion judge made oral findings and granted Richard's motion on June 5, 2020. He concluded Brian was a social guest, and as a result, Richard owed him "a duty to warn . . . of any dangerous condition" Richard knew or had reason to know

3

"creates an unreasonable risk of injury."  The judge found Richard had a duty "to use reasonable care to make the premises safe, . . . includ[ing] the duty to make a reasonable inspection."

However, the motion judge found "no indication that [Richard] knew of a dangerous condition or failed to warn [Brian]."  The judge observed that "if there were any damage to the ladder, it would've been as noticeable by [Brian] as it would've been by [Richard]."  An expert report would not change these facts or establish that Richard breached the duty of care.  The judge entered summary judgment and dismissed the claims against Richard.

Following several discovery extensions, plaintiffs served a liability expert report.  The matter was tried before a jury and a different judge.  The trial judge qualified plaintiffs' expert as an expert in metallurgical engineering.  The expert opined the ladder had a manufacturing defect because it was improperly heat-treated, causing a pre-existing crack to occur on the right side during the extrusion process.  The defect caused the right leg to fail and the left leg to bend to the right.  He also observed delamination[2] on the ladder.  Delamination was

---

[2] Delamination is "the process of a material breaking or being broken into thin layers."  Delamination, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/delamination (last visited Sept. 9, 2025).

4                                                                              A-3624-23

not the cause of the ladder's failure, but instead, evidence of a crack in the ladder, which was revealed after it broke.

On the other hand, the expert could not opine whether the manufacturing defect was the cause of Brian's accident. When asked during direct examination whether the defect was the cause of the ladder's failure, he responded, "I don't know . . . if that's the reason."

After plaintiffs rested, Louisville moved to strike the expert's testimony for lack of foundation and for judgment in its favor, pursuant to Rule 4:40-1. Plaintiffs voluntarily dismissed the design defect and failure to warn claims, leaving the manufacturing defect as their sole remaining claim.

Louisville argued plaintiffs' expert was unable to "provide a causal link between any condition in this ladder and" Brian's incident, because he repeatedly testified he did not know what caused the accident. As a result, the jury would be left to speculate about the cause of the accident since it could not infer causation.

The trial judge concluded there was no evidence the crack in the ladder existed prior to the incident. Giving plaintiffs' evidence all favorable inferences, they could not show proximate causation because their expert could not say what had caused the accident.

A-3624-23

I.

Summary judgment decisions are reviewed de novo, applying the same standard used by the trial court set forth in Rule 4:46-2. We must first decide whether there is a genuine, material issue of fact. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div.), certif. denied, 154 N.J. 608 (1998). If there is no material factual issue, then we decide whether the trial court's ruling on the law was correct. Serico v. Rothberg, 234 N.J. 168, 175 (2018).

Plaintiffs argue summary judgment to Richard was improperly granted because further expert discovery was necessary to prove their claims. The expert's visual inspection showed the ladder had experienced "the effect of significant corrosion." They assert their expert did not have access to the ladder to inspect and test it.

According to plaintiffs, summary judgment in Richard's favor was also improperly granted because there were genuine issues of material fact as to whether Richard breached the duty of care. Richard knew of the corrosive effects of saltwater.

Plaintiffs dispute the applicability of the social guest standard. They argue that even if they were social guests, Richard had a duty to inform them

6

about dangerous conditions known to him, or that should have been known to him. And whether the corrosion on the ladder was evident was a genuine issue of material fact for the jury to resolve. We address these arguments in turn.

At the outset, it is undisputed that Brian was not a social guest. A social guest is considered a licensee rather than an invitee because, despite being invited onto the premises, their "purposes for being on the land may be personal as well as for the owner's benefit." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993). The record readily establishes Brian was on the property for his and Richard's mutual benefit.

"To the social guest or licensee, the landowner . . . does not have a duty actually to discover latent defects when dealing with licensees, [but] the owner must warn a social guest of any dangerous conditions of which the owner had actual knowledge and of which the guest is unaware." Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 44 (2012) (quoting Hopkins, 132 N.J. at 434). It is a given that a plaintiff claiming negligence must demonstrate breach of the duty of care to maintain a prima facie claim of negligence. Pfenninger v. Hunterdon Cent. Reg'l High Sch., 167 N.J. 230, 240 (2001).

Pursuant to these principles, the motion judge correctly found there was no breach of the duty of care because there was no evidence Richard knew about

the dangerous condition and failed to warn Brian. This undisputed fact could not be altered with the aid of expert testimony. We also reject plaintiffs' argument that further discovery was necessary to adduce the evidence regarding breach of the duty of care because it is raised for the first time on appeal and was not raised before the motion judge. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

II.

On a review of a decision granting a Rule 4:40-1 motion for judgment, we also "apply the same standard that governs the trial courts." Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (citing ADS Assocs. Grp. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014)). Motions under Rule 4:40 will be granted "only if, accepting as true all evidence supporting the party opposing the motion and according that party the benefit of all favorable inferences, reasonable minds could not differ." Edwards v. Walsh, 397 N.J. Super. 567, 571 (App. Div. 2007) (emphasis omitted) (citing Dolson v. Anastasia, 55 N.J. 2, 5 (1969)). "The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson, 55 N.J. at 5-6.

Plaintiffs argue they demonstrated a prima facie case of negligence, and we should reverse the judgment entered in favor of Louisville.  They claim they established causation because their expert testified the ladder's right leg failed due to a pre-existing flaw caused by the extrusion process during manufacturing, which created the crack in the ladder leg that caused it to give way.  The pre-existing crack was a structural flaw in the ladder and a contributing proximate cause to the delamination the expert observed on the ladder.

In a manufacturing defect case, "a plaintiff must prove that the product was defective, that the defect existed when the product left the manufacturer's control, and that the defect proximately caused injuries to the plaintiff, a reasonably foreseeable or intended user."  Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 97 (1999).  This can be accomplished through "direct evidence, such as the testimony of an expert who has examined the product, or, in the absence of such evidence, to circumstantial proof."  Id. at 98 (citing Scanlon v. Gen. Motors Corp., 65 N.J. 582, 591 (1974)).  A plaintiff who cannot prove a defect through direct or circumstantial evidence can do so by negating all other causes for the dangerous condition.  Id. at 99.

"The law is 'settled in this State that in a products liability case[,] the injured plaintiff is not required to prove a specific manufacturer's defect.'"  Id.

A-3624-23

at 98 (quoting <u>Moraca v. Ford Motor Co.</u>, 66 N.J. 454, 458 (1975)). Evidence "that a product is not fit for its intended purposes 'requires only proof . . . that "something was wrong" with the product.'" <u>Ibid.</u> (alteration in original) (quoting <u>Scanlon</u>, 65 N.J. at 591). However, "[t]he mere occurrence of an accident and the mere fact that someone was injured are not sufficient to demonstrate the existence of a defect." <u>Ibid.</u> Expert testimony is required when a defect "is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable." <u>Rocco v. N.J. Transit Rail Operations, Inc.</u>, 330 N.J. Super. 320, 341 (App. Div. 2000) (quoting <u>Butler v. Acme Mkts., Inc.</u>, 89 N.J. 270, 283 (1982)).

The trial judge properly granted Louisville judgment on the manufacturing defect claim. Although plaintiffs' expert opined the ladder was sold with a crack that occurred from a flaw in the manufacturing process, which propagated through its right siderail and was evidenced by the delamination, he was unable to show these conditions caused the ladder to fall. Therefore, giving plaintiffs all favorable inferences of their expert's testimony, the jury would still have to improperly speculate about causation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

10