# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49300

HOLLY RICH, fka Holly King Hagerman, )
)
    **Plaintiff-Appellant,** )
)
v. )
)
HEPWORTH HOLZER, LLP, an Idaho )
Limited Liability Partnership, fka )
Hepworth, Janis, & Kluksdal, Chartered; )
E. CRAIG DAUE, individually, )
BUXBAUM DAUE, PLLC, a Montana )
Professional Limited Liability Company, )
)
    **Defendants-Respondents.** )
_____)

Boise, June 2023 Term

Opinion Filed: September 6, 2023

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Honorable Joel E. Tingey, District Judge.

The district court's judgment is <u>affirmed</u>.

Pedersen Whitehead & Hanby, Twin Falls, attorneys for Appellant. Jarom A. Whitehead argued.

Duke Evett, PLLC, Boise, attorney for Respondent Hepworth Holzer, LLP. Keely E. Duke argued.

Hawley Troxell Ennis & Hawley, LLP, attorneys for Respondents E. Craig Daue and Buxbaum Daue, PLLC. Marvin Smith argued.

---

BEVAN, Chief Justice

    This appeal arises out of a legal malpractice case by Holly Rich against her attorneys, Hepworth Holzer, LLP, and E. Craig Daue and Daue Buxbaum, PLLC ("Daue Buxbaum") (collectively, "Respondents"), regarding their legal representation of Rich in an underlying medical malpractice action against Eastern Idaho Regional Medical Center ("EIRMC"), Dr. John Lassetter (a cardiologist), and Dr. Charles Phillips (an intensivist) (collectively, "EIRMC providers"). In that action, Rich's claims against the EIRMC providers failed because they were

1

filed after the statute of limitations expired. Rich alleged in this action that those claims were not filed on time because of Respondents' legal malpractice.

Here, both sides filed substantive motions for summary judgment and the district court found that Rich could not prevail because she had "not disclosed any expert [medical] testimony which complies with the requirements of Idaho law for admissibility." The district court concluded that, lacking evidence to "set out a prima facie case of medical malpractice," in the underlying case, Rich's claim against Respondents for legal malpractice failed. Rich appeals.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

The medical facts are not in dispute. Rich had a mitral valve repair at the Mayo Clinic in 2008 for severe mitral regurgitation. In April 2014, Rich attempted a second mitral valve repair at the University of Utah Hospital, but the repair failed, and a mechanical mitral valve was placed instead. After that surgery, Rich sought care in Idaho Falls from cardiologist John Lassetter, M.D. Dr. Lassetter reported that Rich had prolonged recovery at the University of Utah, mild fatigue, and shortness of breath but was recovering well. She returned to the University of Utah on May 20, 2014, for evaluation and reported worsening symptoms. An electrocardiogram revealed atrial fibrillation.

Throughout the spring and summer of 2015, Rich continued to have shortness of breath. On September 3, 2015, Rich sought a second opinion from Pocatello Cardiology at Portneuf Medical Center in Pocatello, Idaho, where she was evaluated by Ryan Longmore, D.O. During that appointment, Rich had 92% oxygen saturation on the pulse oximetry on room air and a systolic murmur. Rich made a follow-up appointment for an echocardiogram on September 25, 2015, and when she returned for that test, she was out of breath after walking a few steps and needed assistance walking into the clinic. She was placed on oxygen while receiving the echocardiogram.

Dr. Douglas Boehm dictated the echocardiogram results shortly after Rich was discharged from the hospital. Those results showed dangerous changes in Rich's mitral valve function, which required immediate referral to a cardiac surgeon. Rich was not informed of those results when she left the clinic, nor after her echocardiogram was interpreted. The findings from the echocardiogram revealed that Rich suffered from multiple cardiac infirmities.

When Rich woke up at 4:00 a.m. on September 27, 2015, she was in medical distress. Soon after, Rich went to EIRMC. After arriving at the emergency room, Rich told the physician, Dr.

2

Andrew Garrity, that she had undergone an echocardiogram at Portneuf two days earlier with normal results. While Rich was in the emergency room, her condition deteriorated, requiring intubation. She was transferred to the Intensive Care Unit (ICU), where she was treated by Dr. Phillips. While there, Rich went into cardiac arrest and was resuscitated. After being resuscitated, doctors performed a series of life-saving measures, followed by emergency surgery. Rich remained hospitalized for six weeks, during which she experienced cardiogenic shock that damaged her kidneys, liver, brain, and extremities. Because of poor circulation to her extremities, Rich developed dry gangrene, requiring amputation of multiple fingertips and both legs below the knee.

B.    **Procedural Background**

Rich retained E. Craig Daue of Buxbaum Daue on July 26, 2016, to pursue a medical malpractice case against Portneuf. Daue was not licensed to practice law in Idaho, so Daue contacted John Janis with Hepworth Holzer to arrange co-counsel representation on her case. Rich signed a representation agreement with Daue and Janis in June 2017. Their engagement agreement covered "all matters relating to a claim for damages which client believes may exist against Portneuf Medical Center [ ]" but did not identify a potential claim against the EIRMC providers.

To satisfy a condition precedent to filing a medical malpractice case,[1] Hepworth Holzer initiated a prelitigation screening proceeding against Portneuf's medical providers on June 9, 2017, and later expanded the proceeding to include Portneuf itself. Portneuf raised the specter of mounting an "empty chair"[2] defense, prompting Hepworth Holzer on September 22, 2017, to initiate a prelitigation screening proceeding against the EIRMC providers too.

To satisfy the statute of limitations, given the tolling provisions in the prelitigation screening statute,[3] a complaint against the EIRMC providers had to be filed by January 8, 2018. Rich emailed Daue and Janis on January 2, 2018, to ask if the lawsuit against the EIRMC providers had been filed. She was told it would be filed on time. On January 8, 2018, Daue sent a draft complaint to Janis. Eight days later, on January 16, 2018, a complaint and demand for jury trial was finally filed against the EIRMC providers, as well as against Portneuf and some of its providers. Although the complaint against Portneuf and its providers was timely because of the

---

[1] *See* I.C. § 6-1001.

[2] To present an "empty chair" defense, the defendant need only answer the complaint with a general denial and argue to the jury that the injury was due to the negligence of a nonparty to the suit. AM. JUR. 2D *Negligence* § 960.

[3] *See* I.C. § 6-1005.

earlier initiation of prelitigation screening proceedings against them, the statute of limitations against the EIRMC providers had expired. As a result, Rich was unable to maintain her claims against the EIRMC providers.

On September 25, 2018, Rich settled with Portneuf for an undisclosed amount. On December 13, 2019, Rich brought a legal malpractice action against Hepworth Holzer, Craig Daue and Buxbaum Daue based on her inability to maintain her medical malpractice action against the EIRMC providers.

According to the district court's scheduling order, Rich needed to disclose her expert witnesses by June 28, 2021. Rich named four experts by the deadline: (1) attorney G. Lance Nalder, (2) Howard L. Garber, M.D., (3) Elisa Collins, MSN, APRN, and (4) Debra Lee, RN, MS, CCM, CDMS, CRC. The expert witness disclosure included a recitation of the opinions each expert would proffer at trial.

Respondents moved for summary judgment and filed joint motions to strike Nalder's, Dr. Garber's, and Nurse Collins' testimony. While those motions were pending, Respondents disclosed their own experts, Dr. Curtis Sandy and Dr. Edward Kimball. Those experts gave deposition testimony on August 31, 2021. The next day, Rich filed a supplemental expert witness disclosure, using those depositions to change the foundation from which her expert, Dr. Garber, intended to testify about the local standard of care. Respondents then moved to strike Rich's supplemental disclosure.

The district court heard argument on all pending motions. Rich relied on the theory that all she had to show was "some chance of success" on her underlying medical malpractice case to withstand summary judgment. She argued that her experts' statements, as contained in her expert witness disclosures, met this standard. The district court implicitly rejected Rich's "some chance of success" argument. Instead, the court applied the alternate "case-within-a-case" theory as advocated by Respondents and found that Rich could not prevail because she had "not disclosed any expert testimony which complies with the requirements of Idaho law for admissibility." The district court concluded that, lacking evidence to "set out a prima facie case of medical malpractice," Rich's claim against Respondents for legal malpractice failed. Rich appeals.

## II. ISSUES ON APPEAL

1. Whether the district court applied an incorrect legal standard for determining causation in a legal malpractice case.

4

2.  Whether the district court erred in deciding that Rich's experts were not qualified to testify.

3.  Whether the district court erred in disregarding Rich's supplemental expert witness disclosure.

4.  Whether any of the parties are entitled to attorney fees or costs on appeal.

### III.  STANDARDS OF REVIEW

"In a legal malpractice appeal, the standard of review for this Court when reviewing a district court's grant of summary judgment is well-settled: this Court 'uses the same standard properly employed by the district court originally ruling on the motion.'" *Ciccarello v. Davies*, 166 Idaho 153, 158, 456 P.3d 519, 524 (2019) (quoting *Lanham v. Fleenor*, 164 Idaho 355, 358, 429 P.3d 1231, 1234 (2018)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). A moving party must support its assertion by citing particular materials in the record or by showing that the "materials cited do not establish the. . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s]." I.R.C.P. 56(c)(1)(B). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Owen v. Smith*, 168 Idaho 633, 641, 485 P.3d 129, 137 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 141, 456 P.3d 201, 210 (2019)). A "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id*.

Separately, this Court reviews a challenge to the district court's evidentiary rulings, including whether to exclude expert testimony, under an abuse of discretion standard. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50–51, 995 P.2d 816, 820–21 (2000) (citations omitted). When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

IV.    ANALYSIS

This case turns on our determination of the proper standard of proof required in a legal malpractice case. Based on that resolution, the second question becomes straightforward—reviewing the admissibility of expert testimony in medical malpractice cases.

**A.    The "case within a case" standard, as applied by the district court, is appropriate in legal malpractice cases based on medical malpractice.**

Citing several Idaho cases, Rich argues that all she must do to avoid summary judgment on her claims is show that she "had some chance of success" in the underlying medical malpractice action. *See Murray v. Farmers Ins. Co.*, 118 Idaho 224, 227, 796 P.2d 101, 104 (1990). Respondents, on the other hand, cite this Court's more recent decision in *Lanham v. Fleenor*, 164 Idaho 355, 429 P.3d 1231 (2018), arguing that the plaintiff in a legal malpractice case must establish a prima facie case of the underlying medical malpractice—the "case within the case."

Respondents cited *Lanham* in the initial sentences of their joint memorandum in support of their motion for summary judgment—and several times afterward. Rich also cited *Lanham* in her opposition memorandum to summary judgment, but she argued that *Lanham* is "entirely inapposite to this case." The district court never addressed the issue directly, ruling instead by implication that the "case within a case" requirement applied, thus reaching the conclusion we will discuss below: that Rich's expert witnesses were not qualified to testify to withstand summary judgment against Rich's medical providers.

Respondents argue that we shouldn't even reach the initial question about the appropriate standard of proof because Rich failed to preserve the issue below. Respondents argue that the district court did not issue an explicit adverse ruling on Rich's proffered "some chance of success" theory. Citing to Idaho's now-overruled "adverse ruling" rule, Respondents assert that without such a ruling, Rich cannot even assert this claim now. We will address the preservation issue first.

*1. Rich has preserved her argument on the "some chance of success" theory.*

As noted, the parties dispute whether Rich adequately preserved her claim that all she must show to prevail here is that she has "some chance of success" on the ultimate merits of her claim. Even though both parties briefed this issue extensively below, the district court tacitly rejected this claim by reaching the opposite conclusion—that Rich failed to establish the medical malpractice case within her legal malpractice case with admissible expert testimony. The district court found that "the primary issue in this matter is whether Rich's expert witnesses are qualified to testify as

6

to the applicable standard of care." By doing so, the district court implicitly found that Rich was required to show more than just "some chance" of success.

Respondents now argue that Rich cannot assert this theory on appeal because she did not receive an adverse ruling[4] *on that issue* from which to appeal. While it is generally "incumbent on the district court to address all of the issues raised before it[,]" *Day* v. *Idaho Transportation Dept.*, 2023 WL 5185613, at *10 (Idaho Aug. 14, 2023), when a district court implicitly repudiates a claim argued below, we may appropriately address that claim. *Id. See also Lubcke v. Boise City/Ada Cnty. Hous. Auth., Worrell*, 124 Idaho 450, 463, 860 P.2d 653, 666 (1993) (an implicit ruling by the trial court will properly preserve an issue for appeal). Given Rich's argument below and the district court's implicit ruling against it, we will review this issue as Rich has asserted it on appeal.

> 2. *The <u>Lanham v. Fleenor</u> standard required Rich to establish probable cause as though she were trying solely the medical malpractice "case within the case."*

We turn now to considering which theory applies. It is no surprise that the parties arrive before this Court with fully reasonable, but different views on the law governing the question before us. For years, Idaho's courts have repeated a simple refrain in cases like this one, that plaintiffs only have the burden of proving that they had "some chance of success in the [underlying action] before they would be entitled to recover damages" for legal malpractice. *Murray*, 118 Idaho at 227, 796 P.2d at 104; *see also Lamb v. Manweiler*, 129 Idaho 269, 272, 923 P.2d 976, 979 (1996); *Nepanuseno v. Hansen*, 140 Idaho 942, 945, 104 P.3d 984, 987 (Ct. App. 2004); *Greenfield v. Smith*, 162 Idaho 246, 252, 395 P.3d 1279, 1285 (2017). As we now review this standard with a sharp focus, we conclude that this rule, as first adopted in *Murray*, became law with no citation to supporting authority. And yet this standard has been repeated in the cases just cited as authority for the unrefined approach that showing "some chance of success," a term lacking any measurable criteria, is enough to avoid summary judgment in these complex cases.

---

[4] Idaho formerly required an appealing party to obtain an adverse ruling on an issue to preserve the issue for appeal. *See*, *e.g.*, *Matter of Est. of Hirning*, 167 Idaho 669, 678–79, 475 P.3d 1191, 1200–01 (2020). However, we have now rejected the adverse ruling requirement in favor of a broader standard where "[i]t is not mandatory for a party-appellant to obtain an adverse ruling from the trial court to preserve an issue for appellate review, so long as the party's position on that issue was presented to the trial court with argument and authority and noticed for hearing." *State v. Miramontes*, 170 Idaho 920, 924, 517 P.3d 849, 853 (2022).

As a result, we now disavow the "some chance of success" rule from *Murray* and the cases applying it. Instead, we fully reiterate the standard advocated by Respondents and cited in *Lanham*, 164 Idaho at 359, 429 P.3d at 1235, that a plaintiff in a legal malpractice case must generally prove a "case within a case" to establish proximate cause. In *Lanham*, we first set forth the elements of a legal malpractice claim against an attorney in Idaho:

> (1) the existence of an attorney-client relationship that gives rise to a duty of care on the part of the attorney to the client;
>
> (2) an act or omission by the attorney in breach of the duty of care;
>
> (3) the breach of the duty was a proximate cause of damage to the client; and
>
> (4) the fact and extent of the damages alleged.

*Id*. We then explained, "[a]s in many other torts, the plaintiff bears the burden of proving each of these elements by a preponderance of the evidence." *Id*.

In so holding, we also recognized the nuance in legal malpractice cases that comes in establishing proximate cause—that cause "which, in natural or probable sequence, produced the complained injury, loss or damage complained of. It need not be the only cause. It is sufficient if it is a substantial factor in bringing about the injury, loss or damage." *Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 526 P.3d 650, 657 (2023) (quoting IDJI 2.30.2). We noted that a client in a legal malpractice case must not only establish the four tort elements set forth above, but such a client must also prove two cases within a single proceeding. This task has been labeled as proving the "case within the case," or the "suit within a suit." As we noted in *Lanham*:

> [T]he client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding. To hold otherwise would permit a jury to find a defendant liable on the basis of speculation and conjecture. Although the "suit within a suit" concept is not universally applicable, it applies where the alleged negligent conduct involves the failure of an attorney to properly pursue an appeal.

*Lanham*, 164 Idaho at 359, 429 P.3d at 1235 (quoting *Charles Reinhart Co. v. Winiemko*, 513 N.W.2d 773, 776 (Mich. 1994)).

This reference was the Court's effort to clarify that plaintiffs in legal malpractice cases shoulder a heavy burden. They must try two cases: The legal malpractice case before the court and the underlying case in which the lawyer allegedly committed malpractice. Respondents cited *Lanham* in support of this standard in their joint memorandum in support of their motion for summary judgment. While Rich also cited *Lanham* in her opposition memorandum to summary

8

judgment, she argued that the case is "entirely inapposite to this case." In reality, *Lanham* and the premise for which it stands are squarely on point with the issue before us.

We borrow language from other jurisdictions that follow the same rule to more fully define and illuminate this standard going forward. For example, the Illinois Supreme Court has stated the rule in a simple and straightforward way: "In order to recover damages in a legal malpractice action . . . a plaintiff must establish what the result would have been in the underlying action which was improperly litigated by the plaintiff's former attorney." *Goldfine v. Barack, Ferrazzano, Kirschbaum & Perlman*, 18 N.E.3d 884, 891 (Ill. 2014) (citations omitted). Stated more comprehensively, the "case within a case" standard requires the plaintiff to

> prove that he suffered actual damages proximately caused by the attorney's malpractice. To establish proximate causation in a legal malpractice case, the plaintiff must prove a "case within a case," meaning *the plaintiff must establish the underlying action and what the result would have been in that action absent the alleged negligence*. In other words, the plaintiff must establish that, "but for" the attorney's negligence, the damages alleged would not have been incurred. In a legal malpractice case, the plaintiff bears the burden of proving that damages were incurred because of the attorney's negligence.

*Midwest Sanitary Serv., Inc. v. Sandberg, Phoenix & Von Gontard*, *P.C.*, 211 N.E.3d 448, 452 (Ill. 2022) (emphasis added) (internal citations omitted).

The Louisiana Court of Appeals has stated the rule differently, but with the same effect: "A plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim." *Gauthier v. Robinson*, 361 So. 3d 71, 75 (La. Ct. App. 2023) (quoting *Costello v. Hardy*, 864 So. 2d 129, 138 (La. 2014)); *see also Buchanan v. Law Offs. of Sheldon E. Green, P.C.*, 187 N.Y.S.3d 711, 714 (2023) (a legal malpractice plaintiff must show that but for the defendant's alleged negligence in failing to timely commence an action in state court, the plaintiff would have achieved a more favorable outcome on its underlying causes of action.).

Finally, the Connecticut Court of Appeals also succinctly stated the "case within a case" rule for establishing the element of causation in legal malpractice cases:

> This traditional method of presenting the merits of the prior action is often called the case-within-a-case. *The plaintiff must prove that, in the absence of the alleged breach of duty by his or her attorney, the plaintiff would have prevailed in the prior cause of action and would have been entitled to judgment*. To meet this burden, the plaintiff must produce evidence explaining the legal significance of the attorney's failure and the impact this had on the prior action. Put differently, the

9

plaintiff generally must present expert testimony to establish that the defendant's conduct legally caused the injury of which he or she complains.

*Gianetti v. Neigher*, 280 A.3d 555, 588–89 (Conn. App. Ct. 2022) (emphasis added) (citations omitted); *see also Mid City Elec. Corp. v. Peckar & Abramson*, 184 N.Y.S.3d 160, 163 (N.Y.S. 2023) ("An attorney's conduct or inaction is the proximate cause of a plaintiff's damages if but for the attorney's negligence, the plaintiff would have succeeded on the merits of the underlying action, or would not have sustained actual and ascertainable damages.") (citation omitted).

These cases from our sister states help define what we now explicitly hold to be the rule in Idaho: To succeed in a legal malpractice case, the plaintiff must establish a prima facie case of its claims in the underlying action and what the result would have been in that action absent the alleged legal malpractice. This rule reflects Idaho's requirement that, as in any other civil case, a legal malpractice case places the "burden of proving each element by a preponderance of the evidence . . . on the plaintiff." *Ciccarello v. Davies*, 166 Idaho 153, 160, 456 P.3d 519, 526 (2019). We also adopt this standard because the "some chance of success" rule varies from Idaho tort law and would otherwise allow judgment against one's former lawyer to be grounded on some tenuous notion that there was a "chance" a legal malpractice plaintiff might have prevailed absent the legal malpractice she alleges. We have already disavowed a rule in these cases that "would permit a jury to find a defendant liable on the basis of speculation and conjecture." *Lanham*, 164 Idaho at 359, 429 P.3d at 1235. We now do so more explicitly. Thus, the district court correctly subjected Rich's claims to the "case within a case" approach.

We are mindful that this Court has previously noted a potential exception to the rule we adopt today "where the attorney's alleged malpractice is so obvious that it is within the ordinary knowledge and experience of laymen, such as when an attorney allows a statute of limitations to run." *Greenfield*, 162 Idaho at 252, 395 P.3d at 1285. But this exception only goes to the malpractice by the client's former attorney, that is, in the primary case. It has no application to the underlying case within the case.

Some circumstances in which an attorney's malpractice is "obvious" to an average juror may include permitting entry of default against a client, missing a statute of limitations, failing to file tax returns, failing to assert affirmative defenses, or neglecting to instruct a client to answer interrogatories. *See* 60 A.L.R.6th 1 (2010). But even in such cases, like this one for missing the statute of limitations, the plaintiff must still prove causation and damages—that is, that she had a

viable case within the case in which these "obvious" matters were neglected. To establish the validity of the underlying case almost always requires expert testimony.

In *Greenfield*, for example, the client brought a legal malpractice claim against the attorney representing her in a civil and a criminal case. She alleged, in part, that the attorney failed to respond to discovery, move for summary judgment, amend her complaint to include additional causes of action, and put forward no effort to get her criminal charges dismissed. *Id.* at 249, 395 P.3d at 1282. Greenfield's former attorney was granted summary judgment, having successfully argued that Greenfield could not meet the elements of legal malpractice without identifying expert witnesses. *Id.* On appeal, this Court agreed and noted that Greenfield had to provide expert testimony to sustain a claim against her former attorney for legal malpractice. *Id.* at 252, 395 P.3d at 1285. This was, in part, because the deficiencies that Greenfield alleged against her attorney were not "simple matters like an attorney allowing a statute of limitations to run[,]" *id.*, but were instead allegations that required expert testimony. *Id.* Greenfield, as a lay witness in her own case, could testify about what her lawyer did not do, but she did not "have the knowledge or expertise to answer the questions posed and neither does a jury." *Id.* This case fits a similar template.

Rich asserts here that, by missing the statute of limitations (an ostensible "simple matter" under *Greenfield*), Rich was damaged because she had a viable medical malpractice case against Respondents. Proving that Rich had such a case requires admissible expert testimony. Thus, in medical malpractice cases a higher bar is required. To prove causation, Idaho Code sections 6-1012 and 6-1013 require the plaintiff to "provide affidavits of expert witnesses to resist the motion" for summary judgment. *Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 89, 996 P.2d 303, 308 (2000).

Having clarified that the "case within a case" standard was properly applied to Rich's claim below, we turn our focus to the admissibility of expert medical testimony in the underlying case.

**B.      The district court did not err in striking the bulk of Rich's expert witness testimony.**

To survive summary judgment, Rich was required to establish causation through her medical providers as required by Idaho Code sections 6-1012 and 6-1013. That standard, for purposes of summary judgment, must be met through the testimony of expert witnesses. *Id. See also Mortensen v. Baker*, 170 Idaho 744, 752, 516 P.3d 1015, 1023 (2022) (citing *Ackerschott v. Mountain View Hosp., LLC*, 166 Idaho 223, 231, 457 P.3d 875, 883 (2020)) (in complex cases, "the testimony of medical experts is required to establish causation."); *Samuel v. Hepworth,*

*Nungester & Lezamiz, Inc.*, 134 Idaho 84, 89, 996 P.2d 303, 308 (2000) (a party is required to "provide affidavits of expert witnesses to resist the motion" for summary judgment). The district court ruled that all of Rich's expert *medical* testimony was inadmissible and dismissed the case.

Rich argues that the district court abused its discretion in deciding that her experts were not qualified to testify. Her argument turns on the conclusion that the district court applied the wrong legal standard to evaluate the foundation for her three experts: (1) attorney Lance Nalder, (2) Dr. Garber, and (3) Nurse Collins. Because the alleged legal malpractice occurred while handling a medical malpractice case, the district court had to analyze Rich's expert witness disclosures under the standard required by Idaho Code sections 6-1012 and 6-1013. The remaining issue hinges on whether any of Rich's expert witnesses provided admissible testimony. For the reasons below, we hold that the district court did not abuse its discretion by striking Rich's expert witnesses' testimony. Thus, Rich failed to establish a breach of the standard of care in the medical malpractice case that would give rise to a viable legal malpractice case against Respondents.

"Summary judgment proceedings are decided on the basis of admissible evidence." *Campbell v. Kvamme*, 155 Idaho 692, 696, 316 P.3d 104, 108 (2013). We have explained:

> [t]he admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter to be addressed before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial.

*Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012) (quoting *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 13, 175 P.3d 172, 175 (2007)).

The proponent of expert testimony must lay foundation for it. To that end, "[t]he foundation for the admission of opinion testimony based upon scientific knowledge includes both that the witness is an expert in the field and that there is a scientific basis for the expert's opinion." *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 593, 67 P.3d 68, 72 (2003) (citation omitted). "This means that courts must review both 'the expert's qualifications and the records relied upon by the expert to determine whether the expert can establish the necessary foundation.'" *Secol v. Fall River Med., PLLC*, 168 Idaho 339, 351, 483 P.3d 396, 408 (2021) (quoting *Brauner v. AHC of Boise, LLC*, 166 Idaho 398, 406, 459 P.3d 1246, 1254 (2020)).

Idaho Rule of Evidence 702 provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify

12

thereto in the form of an opinion or otherwise." I.R.E. 702. As with lay witnesses, the admissibility standard for expert witnesses

> is a threshold matter that is distinct from whether the testimony raises genuine issues of material fact sufficient to preclude summary judgment. With respect to the threshold issue of admissibility, the liberal construction and reasonable inferences standard does not apply. Instead, the trial court must look at the witness' affidavit or deposition testimony and determine whether it alleges facts which, if taken as true, would render the testimony of that witness admissible.

*Mattox v. Life Care Ctrs. of Am., Inc.*, 157 Idaho 468, 473, 337 P.3d 627, 632 (2014) (cleaned up).

The district court analyzed the disclosures that Rich's counsel attached to his declaration as though they were affidavits, and because Respondents did not object to that approach below, we will do likewise.

### 1. *Lance Nalder's expert opinion.*

Rich identified Nalder as an expert witness in her initial timely disclosures. Nalder is an attorney based in Idaho Falls, Idaho, with twenty-six years of litigation experience. Rich retained Nalder as a legal expert to offer an opinion on Rich's chance of success in establishing a breach of the standard of care, causation, and damages in the underlying medical malpractice case. The district court only permitted Nalder to testify about his *legal* opinion on the lawyers' standard of care. However, the court concluded Nalder was not competent to offer a *medical* opinion on causation or damages because Nalder was not qualified as an expert to offer opinions on medical malpractice and causation. The court observed:

> Nalder opines that Plaintiff had a substantial chance of success against the EIRMC providers. Nalder[,] however[,] is not a medical expert and his attempts to comment on alleged medical malpractice and subsequent causation are without foundation. Furthermore, regurgitating testimony from medical professionals does not make Nalder's testimony admissible.

> Nalder is not an expert in "the particular field[,]" i.e.[,] medical malpractice and causation, and may not express an opinion by relying on experts in that field. Additionally, Nalder has no foundation to come to an "independent judgment" and as such, his use of the opinions of medical professionals is simply hearsay. Accordingly, Nalder's opinion as to whether there was medical malpractice by the EIRMC providers or the Portneuf providers, and whether their respective treatment caused any damages will be precluded.

From this, the district court concluded that Nalder's testimony was "limited to opinions regarding whether the Defendants committed legal malpractice."

13

That an expert relies on the testimony of other experts to reach a conclusion is not, itself, sufficient to exclude the expert's testimony. *See State v. Stanfield*, 158 Idaho 327, 341, 347 P.3d 175, 189 (2015). Even so, "expert testimony that does nothing more than relay otherwise inadmissible hearsay. . . is barred by I.R.E. 703." *Mortensen*, 170 Idaho at 758–59, 516 P.3d at 1029–30 (2022) (quoting *Stanfield*, 158 Idaho at 341, 347 P.3d at 189). Moreover, "[b]ecause the district court has discretion to determine whether a proper foundation has been laid for the admission of expert testimony, the district court also has discretion to determine whether the witness is qualified as an expert in the field and whether there is a scientific basis for the expert's opinion." *Id.* at 757, 516 P.3d at 1028 (citing *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 54, 995 P.2d 816, 824 (2000); I.R.E. 104(a)). "Thus, this Court reviews a challenge to the district court's evidentiary rulings, including whether to exclude expert testimony, under an abuse of discretion standard." *Id.* (citing *Perry*, 134 Idaho at 50–51, 995 P.2d at 820–21).

Nalder's testimony touched on whether Rich had some chance of success in the medical malpractice case based on his opinion of her medical experts' disclosures, relying on reports from Dr. Garber and Nurse Collins. He opined on whether the reports met the requirements under Idaho Code sections 6-1012 and 6-1013. The district court characterized Nalder's reliance on Dr. Garber's and Nurse Collins' reports as merely "regurgitating testimony from medical professionals." This characterization was based, in part, on Nalder's opinion of Dr. Garber's report that merely relayed medical information. For example, Nalder explained, "[g]iven Mrs. Rich's BNP of 812 established shortly after arrival at the Emergency Room at EIRMC on the morning of the 27[th], Dr. Garber's opinion is that the standard of care required consideration of CHF on the differential diagnosis." If Dr. Garber was competent to render such an opinion in a report, then Nalder would have been justified in relying on it. However, Nalder's opinion, which is representative of the other observations Nalder relied on in his declaration, does not rely on Dr. Garber's opinion to reach an independent conclusion; instead, it simply regurgitates Dr. Garber's opinion, which, as we conclude below, Dr. Garber was not qualified to offer. Dr. Garber did not provide a proper foundation for his familiarity with the local standard, nor did he establish that the local standard of care did not deviate from the national standard.

This type of expert testimony is barred under Idaho Rule of Evidence 703. *See* I.R.E. 703 (while experts may rely on inadmissible information to form their opinions, "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only

14

if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect").

Similarly, Nalder's report on Nurse Collins simply restates Nurse Collins' opinion: "She opines that these failures breached the standard of care and that they resulted in multiple liters of IV fluid which dramatically harmed the patient." Although lawyers in legal malpractice cases can rely on the statements of other experts, those statements must be "admissible evidence" under I.R.E. 703. Experts cannot merely "parrot" testimony of other experts—that is hearsay—but can offer their own opinions "in the[ir] particular field," I.R.E. 703, based on other expert's opinions. Nalder did not, however, offer his own *medical* opinions in reliance on those expressed by Dr. Garber or Nurse Collins, as he had no medical expertise to allow him to do so. Moreover, neither Dr. Garber nor Nurse Collins demonstrated familiarity with the applicable community standards of care, as we discuss below. As a result, Nalder's reliance on their inadmissible testimony was improper.

Nalder's legal opinions, as the district court ruled, are admissible, but Nalder's reliance on others' incompetent medical opinions in reaching his legal opinion are inadmissible because (1) he cannot opine on issues of medical causation depending on inadmissible testimony; and (2) he is not a medical expert. Accordingly, we affirm the district court's decision to exclude Nalder's medical testimony.

*1. Dr. Howard Garber's opinion.*

The admissibility of Dr. Garber's expert testimony turns on the outcome of two issues: (1) Whether Dr. Garber had foundational familiarity with the applicable community standard of care; or, (2) when the district court determined that Dr. Garber could not testify as a local expert, whether Rich could bolster the foundation for his testimony through a supplemental expert witness disclosure with information that he was qualified to testify to the national standard of care. We first address Dr. Garber's qualifications as a local expert.

a. Dr. Garber's qualifications as a local expert on the local standard of care

Dr. Garber was Rich's emergency room expert. Rich first disclosed Dr. Garber as a local expert; however, Dr. Garber never practiced in Idaho Falls. Rich argued that Driggs and Blackfoot—where Dr. Garber worked as an emergency physician—were part of the same community as Idaho Falls. The district court disagreed, determining that Dr. Garber was an "out

15

of the area" expert because he had not practiced in the relevant community at all, much less during the relevant timeframe:

> Here, Garber's work in Idaho ended before the alleged malpractice. Section 6-1012 does not allow a court to make an assumption that there was no change in the standard of care between April 2015 and September 2015. Even if he is considered a local expert, Garber has not shown how he would be familiar with the applicable standard of care in late September, 2015.

> Accordingly, based upon his disclosures and opinion, Garber is not qualified to testify in this matter, and his testimony will be precluded.

On appeal, Rich argues that Dr. Garber is not an out of area expert who must familiarize himself with the community standard. Rich maintains that Dr. Garber was appointed as a physician on Idaho's prelitigation panel during the time she received care. Rich also argues that community standards are not defined by city limits, but the geographic area served, which in her case includes Driggs, Idaho.

"'An expert testifying as to the standard of care in medical malpractice actions must show that he or she is familiar with the standard of care for the particular health care professional for the relevant community and time.'" *Morrison v. St. Luke's Reg'l Med. Ctr., Ltd*, 160 Idaho 599, 604–05, 377 P.3d 1062, 1067–68 (2016) (quoting *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002)). When deciding whether an expert is familiar with local community standards of care, "courts must look to the standard of care at issue, the proposed expert's grounds for claiming knowledge of that standard, and determine–employing a measure of common sense—whether those grounds would likely give rise to knowledge of that standard." *Fisk v. McDonald*, 167 Idaho 870, 880–81, 477 P.3d 924, 934–35 (2020). That said, this Court has not required that a medical expert practice in the relevant community before being qualified to testify about the local standard of care. Instead, this Court has held that an "out of the area" expert may become familiar with the standard of care by stating in the affidavit "*how* he became familiar with the local standard of care." *Phillips v. E. Idaho Health Servs., Inc.*, 166 Idaho 731, 747, 463 P.3d 365, 381 (2020) (emphasis in original) (quoting *Hall v. Rocky Mountain Emergency Physicians*, 155 Idaho 322, 327, 312 P.3d 313, 318 (2013)). There is "no 'magic language'. . . required to demonstrate the requisite familiarity with the applicable standard of health care practice, [but] the testimony of the proffered expert must meet minimum requirements as a prerequisite to admission of that expert's opinion." *Samples v. Hanson*, 161 Idaho 179, 183, 384 P.3d 943, 947 (2016).

Dr. Garber did not provide a proper foundation by explaining how he was familiar with the applicable standard of care in Idaho Falls at EIRMC at the time Rich was treated there. Dr. Garber's report identified materials and documents that he relied on to familiarize himself with the standard of care for emergency room physicians, which included medical treatises and websites along with reports and medical records from: (1) Dr. Phillips, (2) Nurse Collins, (3) EIRMC Medical Records, (4) Portneuf Medical Practice Records, (5) Eastern Idaho Cardiology Associate Records, and (6) Portneuf Medical Center Echo Reports. However, the medical treatises and websites Dr. Garber relied on were published between 1997 and 2011, well before the relevant time that Rich underwent medical treatment. And though the reports of Rich's medical providers may be relevant to familiarize Dr. Garber with the standard of care, he offered no explanation in his report about *how* he relied on those reports to become familiar with the standard. *See Samples*, 161 Idaho at 183, 384 P.3d at 947 (quoting *Bybee v. Gorman*, 157 Idaho 169, 174, 335 P.3d 14, 19 (2014)) ("the medical expert must explain 'how he or she became familiar with that standard of care'").

Moreover, this Court has explained that "[i]n medical malpractice cases in Idaho, the geographical scope of the relevant community is a factual issue, defined by Idaho Code section 6-1012 as 'that geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided.'" *Phillips*, 166 Idaho at 751, 463 P.3d at 385 (quoting I.C. § 6-1012). "The 'community' is not defined by physical distance from the health care provider, but by the locations from which its patient base is derived." *Id.* (citing *Bybee*, 157 Idaho at 176, 335 P.3d at 21). There is nothing in Dr. Garber's report to suggest that residents of Driggs commonly sought treatment at EIRMC in Idaho Falls. Neither Rich nor Dr. Garber pointed to any evidence to suggest patients within Dr. Garber's community sought treatment in Idaho Falls. This is a foundational prerequisite to the geographical scope of the relevant community, as we recognized in *Phillips*. *See* 166 Idaho at 751, 463 P.3d at 385. Dr. Garber needed to explain how he had become familiar with the applicable standard of care. He failed to make that showing. Thus, we hold that the district court did not abuse its discretion in concluding that Dr. Garber was not shown to be qualified as a local expert on the local standard of care.

   b. <u>Dr. Garber's qualifications as an out of area expert on the local standard of care</u>

Rich separately argues that, even if Dr. Garber did not establish familiarity with the local standard of care, the national standard of care applies to the EIRMC emergency room physician about whom Dr. Garber was tasked to opine.

"By virtue of their training, board-certified specialists are familiar with the local standard of care which is equivalent to the national standard of care." *Kozlowski v. Rush*, 121 Idaho 825, 828, 828 P.2d 854, 857 (1992) (quoting *Buck v. St. Clair*, 108 Idaho 743, 746–47, 702 P.2d 781, 784–85 (1985)). Thus, when a doctor is board-certified, "[t]he standard of care . . . in this state is a national standard of care." *Samples*, 161 Idaho at 184, 384 P.3d at 948 (quoting *Buck*, 108 Idaho at 745, 702 P.2d at 783). To demonstrate that the expert is qualified to testify about the applicable national standard of care, the specialist must demonstrate two elements:

> [F]irst, that he is board-certified in the same specialty as that of the defendant-physician; this demonstrates knowledge of the appropriate standard of care of board-certified physicians practicing in the specialty in question. Second, an out-of-the-area doctor must inquire of the local standard in order to insure there are no local deviations from the national standard under which the defendant-physician and witness-physician were trained.

*Kozlowski*, 121 Idaho at 828, 828 P.2d at 857 (quoting *Buck*, 108 Idaho at 746–47, 702 P.2d at 784–85).

This Court clarified that benchmark by explaining that an expert must establish the standard of care at issue does not deviate from the national standard of care. *Buck,* 108 Idaho at 745, 702 P.2d at 783. One way an expert may inquire into whether the local standard deviates from the national standard "is to review a deposition of a *local* specialist who states 'that the local standard does not vary from the national standard, coupled with the [reviewing] expert's personal knowledge of the national standard[.]'" *Phillips*, 166 Idaho at 748, 463 P.3d at 382 (emphasis added) (quoting *Perry*, 134 Idaho at 51, 995 P.2d at 821). This review must be *coupled with the expert's personal knowledge of the national standard.*" *Grover v. Smith*, 137 Idaho 247, 251, 46 P.3d 1105, 1109 (2002) (emphasis added) (quoting *Perry*, 134 Idaho at 51–52, 995 P.2d at 821–22). "External materials or documents may also assist in formulating and establishing the applicable standard of health care." *Id.* (citing *Perry*, 134 Idaho at 51–52, 995 P.2d at 821–22). In either case, "[h]owever, this Court has required that the standard of care must be 'clearly articulate[d] . . . for the particular time, place and specialty at issue[.]'" *Id.* (quoting *Suhadolnik v. Pressman*, 151 Idaho 110, 118, 254 P.3d 11, 19 (2011)).

18

Dr. Garber is certified in emergency medicine through the American Board of Emergency Medicine. Only one of the physicians named in Rich's disclosure, Dr. Garrity, shares a board-certification in emergency medicine with Dr. Garber. Dr. Phillips and Dr. Lassetter, the other two defendant-physicians Rich sued, both have different certifications than Dr. Garber. Dr. Phillips is an intensivist, and Dr. Lassetter is a board-certified cardiologist. Additionally, Dr. Garber's report does not disclose that he consulted any experts from the Idaho Falls area to learn about the standard of care in the community. Nor did he explain that he learned that the community standard of care for board-certified emergency medical doctors in Idaho Falls did not deviate from the national standard.

Both experts disclosed by Respondents identified variations between the local and national standards of care during their depositions, including variations relating to access to BiPAP and CPAP in the emergency room. Dr. Garber failed to explain *how* he learned of the ostensible similarity between the local and national standards. Given these variations, and Dr. Garber's failure to separately identify his own personal knowledge of the standard of care in his initial disclosure, we affirm the district court's decision that Dr. Garber also was not shown to be qualified to testify as an out of area expert who had familiarized himself with the local standard of care.

*1. Nurse Elisa Collins' opinion.*

Finally, Rich argues that the district court erred in excluding Nurse Collins' opinion. Nurse Collins was a nurse practitioner working in Idaho Falls at the time Rich received medical care. Rich also challenges the district court's alleged failure to consider that Nurse Collins properly opined as to the standard of care for nurses and lab employees at EIRMC.

The district court's rationale for excluding Collins' expert testimony was based, in part, on the fact that Collins

> expressly gave an opinion "based on [her] experience working as an RN at EIRMC from 2004 through 2011 . . .." [ ]. Collins' testimony as to a policy or a standard of care in 2011 is essentially irrelevant. There is nothing in Collins' disclosure where she asserts that her work at a sleep clinic in September 2015 qualifies her to testify as to alleged negligence in this case. While Collins is clearly testifying as to an alleged standard of care in September 2015, other than improperly relying on her work in 2004 through 2011, she does not identify the foundation whereby she has knowledge of the applicable standard of care in September 2015. While Collins has work experience and refers to learned treatises, she must still establish a nexus between her opinion and the standard of care at EIRMC as of September 2015. She has failed to make this critical connection.

19

Rich claims that Nurse Collins was familiar with the applicable standard of care because she practiced in Idaho Falls during the relevant time. Nurse Collins' experience working as registered nurse at EIRMC on the inpatient cardiac unit ended in May 2011. But Rich argues that was enough to qualify Nurse Collins (who admittedly worked in cardiac care as a nurse practitioner) to speak to the standard of care for medical doctors practicing cardiology. We disagree.

The standards that a nurse practitioner or registered nurse must meet are distinct from those required for a physician, and both are licensed by different oversight boards. *Compare* I.C. § 54-1409(1) and IDAPA 24.34.01.285 *with* I.C. §§ 54-1803(5)–(7), 1810, and IDAPA 24.33.03.100), and *compare* I.C. § 54-1402(1) ("An advanced practice registered nurse is authorized to perform advanced nursing practice, which may include the prescribing, administering and dispensing of therapeutic pharmacologic agents, as defined by board rules") and IDAPA 24.34.01.271 *with* I.C. § 54-1803(1) (defining "practice of medicine" as "[t]he investigation, diagnosis, treatment, correction, or prevention of or prescription for any human disease, ailment, injury, infirmity, deformity or other condition, physical or mental, by any means or instrumentality that involves the application of principles or techniques of medical science[.]").

According to Nurse Collins' curriculum vitae ("CV"), she had experience working in Idaho Falls at The Sleep Specialists, where she provided "sleep medicine care" from May 2013 through September 2017. Before working at The Sleep Specialists, Nurse Collins worked as a charge nurse in Reston, Virginia, from May 2003 through December 2012. Most recently, from 2018 to present, Nurse Collins worked as a nurse practitioner in Gardenia, California. Nurse Collins' CV does not identify any experience working in an emergency department. Rich's expert disclosure states that Nurse Collins worked at EIRMC's cardiac stepdown unit in the ICU from May 2003 through April 2004, but this purported experience is not reflected on her CV. Nurse Collins claims in her report that she worked at EIRMC from December 2004 to May 2011, which may be correct, but her CV indicates that she was working in Virginia at that time.

Although Rich argues that Nurse Collins was qualified to testify to the local standard in Idaho Falls because she knew the standard of care, Idaho Code section 6-1012 requires not only that an expert be familiar with the standard of care for the relevant medical specialty, but that familiarity must arise during the relevant time and in the community where the care was provided. Nurse Collins worked at a sleep clinic during the relevant time. The duties Nurse Collins had while

20

working at The Sleep Specialists during the time Rich received medical treatment at EIRMC involved such tasks as performing sleep medicine care, which included patient evaluations, reviewing results for diagnostic tests, disbursing controlled substances for sleep, and delivering supplemental oxygen therapy and CPAP/BiPAP.

Nothing in Nurse Collins' report identifies the foundation for her purported knowledge of the standard of care for a physician working at an Idaho Falls emergency room in September 2015. The district court explained that "[w]hile Collins has work experience and refers to learned treatises, she must still establish a nexus between her opinion and the standard of care at EIRMC as of September 2015." The district court found that Nurse Collins failed to establish a nexus, and we agree. Nurse Collins was not qualified by her education, training, or experience under Idaho Rule of Evidence 702 to offer an expert opinion about the care a physician provides, nor was she qualified to opine more broadly on causation. As a result, we hold that the district court's decision to exclude her testimony was not an abuse of discretion.

**C.** **The district court did not err in declining to consider Rich's supplemental expert witness disclosure.**

Rich also argues that her supplemental expert witness disclosure for Dr. Garber was timely and did not substantively change the opinion he offered in the first disclosure.

"The timing for [expert witness] disclosures shall be set in the district court's scheduling order." *Easterling v. Kendall*, 159 Idaho 902, 910, 367 P.3d 1214, 1222 (2016); *see also* I.R.C.P. 16(a)(2)(B). "A district court has authority to sanction parties for non-compliance with scheduling orders, including prohibiting parties from introducing untimely disclosed evidence." *Id.*; *see also* I.R.C.P. 16(e); I.R.C.P. 37(c)(1). Exclusion of an expert witness is an appropriate sanction for a failure to properly disclose the expert witness' anticipated testimony. *See Clark v. Klein*, 137 Idaho 154, 157, 45 P.3d 810, 813 (2002). "The imposition of discovery sanctions is within the discretion of the trial court and [this] Court will not overturn that decision absent a manifest abuse of discretion." *Sommer v. Misty Valley, LLC*, 170 Idaho 413, 427, 511 P.3d 833, 847 (2021) (quoting *Farr v. Mischler*, 129 Idaho 201, 206, 923 P.2d 446, 451 (1996)).

According to the district court's scheduling order, Rich's expert witness disclosures, "including opinions and conclusions and the *foundation for such opinions and conclusions* must be filed at least 120 days before trial," and her "rebuttal expert disclosures shall be due 60 days

prior to trial."[5] (Emphasis added). After Rich disclosed her initial experts, Respondents argued in joint motions for summary judgment and in a motion in limine that Dr. Garber did not have personal knowledge of the local standard of care for an emergency room physician or an intensivist in Idaho Falls in September 2015.

Soon after, Respondents disclosed their own standard of care experts—Dr. Curtis Sandy and Dr. Edward Kimball. Both experts gave deposition testimony on August 31, 2021, and the transcripts of those depositions were provided to Rich's expert, Dr. Garber, on September 1, 2021. On September 2, 2021, Rich filed her opposition to Respondents' joint motion in limine, and she attached a supplemental expert witness disclosure for Dr. Garber as an exhibit to her motion. Rich argued that, after reviewing those deposition transcripts, Dr. Garber could now testify to the *national* standard of care because "these depositions confirmed his understanding that the standard of care applicable to board-certified emergency room physicians was a national standard of care and that there were no significant deviations from the national standard in Idaho Falls in 2015." On October 19, 2021, following a motion to strike from Respondents, the district court issued a decision striking Dr. Garber's expert testimony on the national standard of care, noting that, while the disclosure was adequate to identify the proposed rebuttal testimony, it was untimely as an *initial disclosure* that Rich could present in her case-in-chief. The district court emphasized that the supplemental disclosure appeared to constitute a shift in the foundation for Dr. Garber's testimony and recharacterized Dr. Garber from a supposedly local expert to an out of area expert who became familiar with the local standard of care through a review of the opposing experts' deposition testimony.

While Idaho Rule of Civil Procedure 26(e)(2) requires parties to supplement their expert witness disclosures in a timely manner, it does not permit a party to diverge from intended testimony in the initial disclosure, nor does it permit a party to disclose a *new* opinion outside the scheduling deadline. *See* I.R.C.P. 26(e)(1). To the contrary, this Court has explained that a district court is within its discretion to sanction an untimely disclosure, even to the extent of excluding the evidence. *See Easterling*, 159 Idaho at 911, 367 P.3d at 1223 ("Rule 16[e][2] provides that if a

___

[5] Given the trial date of October 26, 2021, the deadline for Rich's initial expert witness disclosure was June 28, 2021, and Rich timely disclosed her initial experts in compliance with the district court's order. The deadline for Rich's rebuttal expert witness disclosure was extended to September 10, 2021, pursuant to a stipulation between the parties that was approved by the district court.

party violates a court's scheduling order the court may sanction the party by excluding evidence as provided in Rule 37(b)(2)[A].").

Rich's original position that Dr. Garber was a local expert and thus aware of the local standard took an abrupt shift in her supplemental disclosure when she claimed Dr. Garber was an out of area expert who was unfamiliar with the local standard until *after* reviewing depositions from Respondents' experts. Rich's supplemental disclosure explained that Dr. Garber's review of Respondents' expert's depositions "confirmed his understanding that the standard of care applicable to board-certified emergency room physicians was a national standard of care and that there were not significant deviations from the national standard in Idaho Falls in 2015." But Dr. Sandy's and Dr. Kimball's depositions do not claim either expert was a local doctor. Thus, those depositions could not provide foundation for Dr. Garber's amended disclosure. *See Rhodehouse v. Stutts*, 125 Idaho 208, 212, 868 P.2d 1224, 1228 (1994) ("Because there is no indication that [the expert] inquired of a local doctor . . . there is not sufficient foundation in [the expert's] affidavit to show that he had actual knowledge of the applicable community standard.").

Rich's supplemental expert witness disclosure was an effort to bootstrap Dr. Garber's late opinion on the national standard of care to his timely disclosure as a supposed local expert. The district court's order, however, explained that foundation for expert witness opinions was to be disclosed by June 28, 2021. Consequently, Rich's September 2021 effort to disclose a new foundation for the initially disclosed opinions of Dr. Garber was untimely. As a result, the district court acted within its discretion when it excluded Rich's supplemental expert witness disclosure.

## D.    Neither party is entitled to attorney fees.

Rich does not request attorney fees on appeal. Both Buxbaum Daue and Hepworth Holzer request fees under Idaho Code section 12-121. Buxbaum Daue argues that Rich failed to show "some chance of success" by failing to disclose qualified medical experts and thus pursued this appeal frivolously, unreasonably, or without foundation.

Attorney fees under Idaho Code section 12-121 "will be awarded to the prevailing party on appeal only when this Court is left with the abiding belief that the entire appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation." *Breckenridge Prop. Fund 2016, LLC v. Wally Enters., Inc.*, 170 Idaho 649, 666, 516 P.3d 73, 90 (2022). We conclude that Rich's arguments were made in good faith and did not merely ask this Court to second-guess the decision below. Rich asked this Court to determine the proper standard that applies to a legal

malpractice case brought after a medical malpractice case, a standard previously not well-defined, as we have said. Thus, her appeal has moved the law forward in Idaho in a meaningful way. Accordingly, we decline to award attorney fees.

## VI. CONCLUSION

The district court's judgment is affirmed. Respondents are awarded costs pursuant to Idaho Appellate Rule 40(a) as a matter of course.

JUSTICES MOELLER and BURDICK, pro tem, and JUDGES REARDON, pro tem, and SCOTT, pro tem CONCUR.